## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANNON SKILLERN and RYAN CORKEN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br>v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>　　　　　　　　Defendant. | Case No. 1:21-cv-06808<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Brannon Skillern and Ryan Corken, individually and behalf of all others similarly situated (collectively, the "Classes"), bring this class action against defendant Peloton Interactive, Inc. ("Peloton").

### NATURE OF THE ACTION

1.　　This is a class action for breach of contract and consumer protection act violations arising from Peloton's unlawful charge of a "sales tax" to Massachusetts, New York, and Virginia customers on their Peloton membership subscriptions, despite the tax-exempt status of such digital goods under state law.

2.　　Peloton is an exercise equipment and media company that allows its customers to replicate the "boutique" studio-fitness experience at home by streaming live and on-demand exercise classes.[1] Funded in 2012 and launched in 2013, Peloton offers for sale an internet-connected stationary bicycle (the "Peloton Bike" or "Bike") and treadmill (the "Peloton Tread" or "Tread") that monthly subscribers can use to participate remotely in exercise classes that are streamed to the Bike and Tread's connected screens. In addition, Peloton's class library includes

---

[1] Peloton, Our Story, https://www.onepeloton.com/company. All websites cited herein were last accessed on August 11, 2021.

live and on-demand strength training, yoga, stretch, and meditation, which can be used without the Bike and Tread.

3.     Peloton describes itself as "the largest interactive fitness platform in the world" and boasts over 5.4 million members as of March 31, 2021.[2] Peloton generated $1.8 billion in revenue in 2020 and $1.26 billion as of the third-quarter 2021.[3]

4.     With a $39/month All-Access Membership subscription, users can access Peloton's full catalogue of classes along with real-time performance metric tracking when used with the Bike or Tread.[4] Peloton also offers an individual-user Digital Membership (together with the All-Access Membership, "Peloton Membership") for $12.99/month through the Peloton App, which grants subscribers with a compatible device access to Peloton's live and on-demand class catalogue. Subscription to Peloton's All Access Membership is required with the purchase of the Peloton Bike and Peloton Tread.

5.     By purchasing or using a Peloton Membership, subscribers agree to Peloton's Membership Terms, which supplement and comprise part of Peloton's Terms of Service. The Membership Terms provide that subscribers "agree to pay the monthly fee specified" at purchase "plus any applicable taxes and other charges."[5] Subscribers also provide a payment method that is saved and charged on a recurring, monthly basis at the beginning of the monthly membership cycle. The Membership Terms further provide that subscribers authorize Peloton to use that provided payment method "to pay any amounts described [in the Membership Terms] without requiring a signed receipt."[6]

---

[2] Peloton, Investor Relations, https://investor.onepeloton.com/investor-relations.
[3] Id.
[4] Peloton, Bikes, https://www.onepeloton.com/bikes; Peloton, Treads, https://www.onepeloton.com/tread.
[5] Peloton, Membership Terms, https://www.onepeloton.com/membership-terms.
[6] Id.

8356678v1/017146

6.      In January and December 2019, plaintiffs Brannon Skillern and Ryan Corken, respectively, purchased the Peloton Bike and subscribed to Peloton's All-Access Membership subscription for $39/month. Yet, Peloton charged them both an over-6% "sales tax" on their subscriptions every month through December 2020 even though no such tax was actually owed under state law, resulting in substantial overcharges in violation of Peloton's Membership Terms and state law.

7.      Peloton's unlawful practice has harmed plaintiffs and all Class members in precisely the same way. Indeed, on a standard and uniform basis, Peloton charges users in several U.S. states a sales tax on their monthly subscription even though digital products in many of those states are not taxable, in violation of Peloton's Membership Terms and state law. Peloton has charged its customers, including plaintiffs, in at least Virginia, New York, and Massachusetts, an unlawful digital sales tax, collecting millions of dollars in overcharges.

8.      Furthermore, Peloton willfully and knowingly overcharged its subscribers a false and unlawful sales tax on their Peloton Memberships. When customers complained or inquired about the impermissible tax charge, Peloton assured them that its business practices comply with state and local tax requirements. And Peloton falsely represented that the tax charges imposed on Peloton Membership subscriptions were consistent with the practices of other digital subscription businesses. Although Peloton claims to regularly review its billing and collection practices for taxability compliance purposes, Peloton engaged in a uniform, years-long practice of charging a "sales tax" on its customers' Peloton Memberships subscriptions in jurisdictions that do not permit the taxation of digital products.

8356678v1/017146

9.      Worse, Peloton admittedly has not remitted the unlawfully collected "sales tax" to state authorities, recouping these overcharges in an effort to maximize profits at their subscribers' expense and under the guise of a state-imposed tax.

10.     Peloton eventually changed its taxation practices in at least Massachusetts, New York, and Virginia, effective January 1, 2021, despite knowing about the impropriety of its overcharge misconduct before that date. Peloton has not reimbursed plaintiffs or Class members for the unlawful taxes it collected before January 1, 2021.

11.     Plaintiffs bring this action on behalf of themselves individually and all others similarly situated to challenge Peloton's breach of the membership contract and its willful and knowing unlawful, deceptive, and fraudulent overcharging practices. Plaintiffs seek all available compensatory, statutory, and punitive damages, and reasonable attorney's fees and costs.

## THE PARTIES

12.     Plaintiff Brannon Skillern resides in Vienna, Virginia and is a citizen of Virginia. Skillern has owned a Peloton Bike and subscribed to Peloton's All-Access Membership since January 2019, when she purchased the Bike while living in Brooklyn, New York. Skillern has lived in Vienna, Virginia since April 1, 2020.

13.     Plaintiff Ryan Corken resides in Reading, Massachusetts, and is a citizen of Massachusetts. Corken has owned a Peloton Bike and subscribed to Peloton's All-Access Membership since December 2019.

14.     Defendant Peloton is a Delaware corporation with its corporate headquarters and principal place of business located in New York, New York. Peloton is therefore a citizen of Delaware and New York.

8356678v1/017146

## JURISDICTION AND VENUE

15.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from defendant, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the proposed class contains more than 100 members.

16.     The Court has personal jurisdiction over Peloton because Peloton resides in and is subject to general jurisdiction in this District. The Court also has personal jurisdiction over Peloton because Peloton markets, distributes, offers, and sells the Peloton Bike, Peloton Tread, and Peloton Membership throughout the United States, including in this District, and the conduct complained of occurred in or was targeted at this District. Additionally, Peloton's Terms of Service provide that all disputes not required to be arbitrated be adjudicated in New York, New York and are to be governed by New York law.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)–(2) because Peloton resides in this District and a substantial portion of the events giving rise to plaintiffs' claims occurred in this judicial district.

## FACTUAL BACKGROUND

**A.      Peloton & Plaintiffs' Peloton Memberships**

18.     Peloton allows its customers to replicate a high-end studio-fitness experience at home by streaming live and on-demand exercise classes from its Peloton Bike and Peloton Tread products as well as through the Peloton App that is compatible with a number of cell phones, tablets, and televisions and is available online.

8356678v1/017146

19.     Peloton's popularity, success, and high membership numbers are well known. Peloton has been described as "a bonafide fitness phenomenon"[7] and a "fitness unicorn,"[8] and its members are known for their "rabid customer loyalty."[9] In addition to substantial membership and revenue numbers, Peloton boasts a 92% 12-month customer retention rate as of March 31, 2021.[10]

20.     Peloton offers its users two types of Peloton Membership: the All-Access Membership for $39 per month (required with the Bike and Tread) and the Digital Membership for $12.99 per month. Peloton promotes these Memberships and Membership rates through its website, *onepeloton.com*,[11] as well as in its physical showroom locations around the country, including in Massachusetts, New York, and Virginia.[12]

21.     Peloton markets the All-Access Membership as the "most value-packed Peloton membership" because a single membership includes unlimited household profiles.[13] Access to the Peloton App is also included in the All-Access Membership.

22.     The Digital Membership offers subscribers, on a single-device, single-profile basis, access to Peloton's live and on-demand class catalogue through the Peloton App.

23.     The Peloton App is free to download on all compatible devices, regardless of Membership status.

---

[7] CNBC, *How Peloton exercise bikes became a $4 billion fitness start-up with a cult following* (updated Feb. 12, 2019), https://www.cnbc.com/2019/02/12/how-peloton-exercise-bikes-and-streaming-gained-a-cult-following.html; *see also* New York Times, *Peloton Is a Phenomenon. Can It Last?* (Aug. 28, 2019), https://www.theatlantic.com/magazine/archive/2019/12/the-tribe-of-peloton/600748/.

[8] Slate, *Peloton Won the Pandemic. Can It Survive the Reopening of Gyms?* (Mar. 29, 2021), https://slate.com/business/2021/03/peloton-pandemic-sales-comeback-gyms-reopening.html.

[9] The Atlantic, *I Joined A Stationary-Biker Gang* (Dec. 2019), https://www.theatlantic.com/magazine/archive/2019/12/the-tribe-of-peloton/600748/.

[10] Peloton, Investor Relations.

[11] *See, e.g.*, Peloton, Membership, https://www.onepeloton.com/membership; *see also* Peloton, Bikes (promoting the $39/month All-Access Membership); Peloton, Treads (same).

[12] Peloton, Locations, https://www.onepeloton.com/showrooms (listing showroom locations in Natick, Dedham, Boston, and Chestnut Hill, Massachusetts; Manhasset, New York, White Plains, and Garden City, New York; and Tysons Corner and Richmond, Virginia).

[13] Peloton, Membership, https://www.onepeloton.com/membership.

24.     On or about January 15, 2019, Skillern purchased a Peloton Bike and subscribed to Peloton's All-Access Membership. Since becoming an All-Access Membership subscriber, Skillern has timely paid for her Peloton Membership each month. Skillern's monthly payments are made automatically and electronically with a credit or debit card on file with Peloton. Skillern continues to subscribe to Peloton's All-Access Membership today.

25.     On or about December 8, 2019, Corken purchased a Peloton Bike and subscribed to Peloton's All-Access Membership. Beginning in December 2019, Corken has timely paid for his All-Access Membership every month. Corken's monthly payments are made automatically and electronically with a credit or debit card on file with Peloton. Corken continues to subscribe to Peloton's All-Access Membership today.

**B.     Peloton's Membership Terms & Terms of Service**

26.     Peloton's Terms of Service, which include and incorporate its Membership Terms, warranty, and other policies, are a form contract that govern Peloton's relationship with its members.[14]

27.     Peloton's Membership Terms provide that subscribers agree to pay the monthly Peloton Membership fee in addition to other charges, such as sales tax where applicable:

> Payment
>
> Amount to be Charged. <u>Membership Holders agree to pay the monthly fee specified when you purchased your Membership (plus any *applicable taxes and other charges*)</u>. If the amount to be charged varies from the amount you pre-authorized (other than due to the imposition of, or change in, applicable sales tax), you have the right to receive, and we will provide, notice of the amount to be charged and the date of the charge before the scheduled date of the transaction, unless applicable law requires you to expressly consent to the change in price. Any agreement you have with your payment provider governs your use of your specified payment method. You agree that we may accumulate charges incurred and submit them as one or more aggregate charges during or at the end of each

---

[14] Peloton Terms of Service at 1, 21–22 ¶ 26 (updated Sept. 14, 2018), attached hereto as Exhibit 1. Emphasis is added unless otherwise indicated.

billing cycle. Your failure to terminate and/or continued use of your Membership reaffirms that we are authorized to charge you for that Membership. We may submit those charges for payment and you will be responsible for such charges. This does not waive our right to seek payment directly from you.[15]

28.     The Membership Terms also provide that Peloton Membership subscribers will be asked to provide a payment method that Peloton is authorized to charge each month. By accepting the Membership Terms, subscribers agree to pay "any amounts described herein without requiring a signed receipt" on a recurring, monthly basis at the beginning of the membership cycle.[16] That up-front charge provides Peloton Membership access for one month thereafter.

29.     The Terms of Service also contain an arbitration clause, which requires the parties to arbitrate any claims or disputes through the American Arbitration Association ("AAA") pursuant to AAA's Consumer Arbitration Rules.[17] This arbitration clause (including all provisions therein), however, is unenforceable.

30.     In November 2019, after Peloton refused to pay arbitration fees in connection with a mass arbitration in violation of AAA's Consumer Arbitration Rules, the AAA wrote a letter to Peloton's counsel stating that "the AAA will decline to accept future consumer matters submitted against or by the respondent [Peloton]" and requesting that Peloton "remove AAA from its consumer arbitration agreements so that there is no confusion to Peloton's customers."[18]

31.     Through at least December 23, 2019, despite AAA's letter, Peloton refused to comply with AAA's request to remove AAA from its arbitration agreements and continued to

---

[15] Peloton, Membership Terms (emphasis added).
[16] *Id.*
[17] *See* Ex. 1 at 17–18 ¶ 20(a), (c).
[18] Letter from AAA to Ashley Keller, Esq. & Steven Feldman, Esq., Counsel for Peloton (Nov. 14, 2019), attached hereto as Exhibit 2. Peloton's refusal to pay arbitration fees was also a violation of its own Terms of Service. *See* Ex. 1 at 18 ¶ 20(d).

8

represent to its customers that they were subject to binding arbitration with AAA in an effort to deter litigation.

32.     As a result of Peloton's failure to comply with AAA's Consumer Arbitration Rules—and its own Terms of Service—the arbitration clause is invalid and unenforceable as to plaintiffs and the Class.

## C.     Peloton Knowingly and Willfully Overcharges Membership Subscribers

33.     Digital goods, such as Peloton Memberships, are not taxable under the laws of several U.S. states. Yet, Peloton knowingly and unlawfully has charged, and subscribers have paid, sales tax on Peloton Membership subscriptions in states where digital goods are not taxable, including in Massachusetts, New York, and Virginia.

34.     Under Massachusetts law, "[d]igital products… delivered electronically, including but not limited to music, video, reading materials or ring tones" are expressly tax-exempt.[19] At present, the Commonwealth subjects to taxation only one category of digital product, standardized computer software, whether delivered electronically online or otherwise.[20]

35.     "In New York, digital goods are not subject to sales tax."[21] Under New York law, any tax must be authorized by statute,[22] and digital products are not included in the goods or services subject to either sales or use tax.[23] In multiple advisory opinions, the New York State Commissioner of Taxation and Finance has clarified the tax-exempt status of digital goods and

---

[19] M.T.G. TIR 05-8 at VII.B.8 (July 14, 2005, as supplemented 2021).

[20] *See id.*; *Citrix Sys., Inc. v. Comm'r of Rev.*, 139 N.E.3d 293 (Mass. Sup. Ct. 2020) (affirming Appellate Tax Board's decision to uphold sales tax assessment against subscriptions for Citrix, a remote computer desktop software, and discussing taxation of online computer software).

[21] N.Y. State Dep't of Taxation & Fin., *Report on the Taxation of the Telecom. Indus. In N.Y. State* (Oct. 2009) at 24,
https://www.tax.ny.gov/pdf/stats/policy_special/telecommunications/2009/taxation_of_the_telecommunications_industry_in_ny_state_october_2009.pdf; *see also id.* at 13 (addressing nontaxable "internet video services").

[22] *E.g.*, *Am. Cablevision of Rochester, Inc. v. Jacobs*, 474 N.Y.S.2d 653, 655 (N.Y. App. Div. 1984).

[23] *See* N.Y. Tax L. §§ 1105 (outlining taxable goods under New York law), 1110 (outlining use tax); *see also* Catherine Chen, *Taxation of Digital Goods & Servs.*, 70 N.Y.U. ANN. SURV. AM. L. 421, 452–53 & n.169 (2015) (identifying New York as among the U.S. states that "either do not affirmatively impose sales tax on digital content or expressly exempt it from taxation").

services similar to a Peloton Membership, such as monthly subscriptions to digital online video courses and the online video course library,[24] the fee to access and stream online courses in the form of pre-recorded video lectures,[25] and online audio and video driving instruction courses.[26] The Department of Taxation and Finance has also opined on the tax-exempt status of the electronic delivery of digital music[27] and the online sale of music, photography, and video content that is delivered electronically.[28]

36.     Virginia excludes from taxation "digital products delivered electronically, such as software, downloaded music, ring tones, and reading materials" expressly in the commonwealth's code.[29] The Virginia Department of Taxation similarly explains on its website that such digital products are among the "telecommunications services [that] are *not* taxed."[30] In fact, the Virginia legislature rejected in February 2018 a measure to impose the commonwealth's communications sales and use tax to streaming services.[31]

37.     Although plaintiffs' All-Access Memberships cost $39/month, Peloton overcharged plaintiffs under the guise of a sales tax that is not actually applicable in their states of residence.

---

[24]   N.Y. Dep't of Taxation & Fin., Advisory Op. TSB-A-20(18)S (June 16, 2020), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a20_18s.pdf.

[25] *Id.* No. TSB-A-20(33)S (July 14, 2020), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a20_33s.pdf.

[26] *Id.* No. TSB-A-13(1)S (Jan. 8, 2013), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a13_1s.pdf.

[27] *Id.* No. TSB-A-07(14)S (May 17, 2007), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a07_14s.pdf; *id.* No. TSB-A-01(15)S (Apr. 18, 2001), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a01_15s.pdf.

[28] *Id.* No. TSB-A-08(22)S (May 2, 2008), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a08_22s.pdf; *see also id.* TSB-A-08(41), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a08_41s.pdf (holding that "[i]n the same way that audio content (music) and visual content (photographs) delivered electronically are not subject to sales tax, sales of videos that are delivered to customers electronically over the Internet and downloaded for use on the customer's computer or other device likewise are sales of an intangible and are not subject to sales or compensating use tax").

[29] Va. Code Ann. § 58.1-648(C)

[30] Virginia Tax, *Communications Taxes*, https://www.tax.virginia.gov/communications-taxes.

[31]   Gail Cole, *Virginia won't be taxing Netflix for now* (Feb. 1, 2018), https://www.avalara.com/us/en/blog/2018/02/virginia-wont-be-taxing-netflix-for-now.html?CampaignID=7010b000001Dqep&lso=Social&lsmr=Social&adbsc=core_20190225_2703481&adbid=1100062910166888449&adbpl=tw&adbpr=19937859.

10

38.     Beginning when Skillern purchased her Peloton Bike and subscribed to the $39/month All-Access Membership in January 2019, when Skillern lived in Brooklyn, New York, Peloton charged, and Skillern paid, an additional $3.47/month attributable to sales tax. As a result, Skillern paid a total of $42.47 each month, instead of $39.00. This overcharging conduct continued through the time when Skillern moved to Vienna, Virginia in April 2020. Thereafter, Peloton continued to overcharge Skillern a $3.47 false tax every month on her Peloton All-Access Membership while she was a resident of Virginia. As a result, Skillern paid a total of $42.47 each month, instead of $39.00. During the relevant period, Skillern paid the false tax on her Peloton Membership every month, on or around the 26th of each month.

39.     Beginning when Corken purchased his Peloton Bike and subscribed to the $39/month All-Access Membership in December 2019, Peloton charged, and Corken paid, an additional $2.44/month attributable to sales tax. As a result, Corken paid a total of $41.44 each month, instead of $39.00. During the relevant period, Corken paid the false tax on his Peloton Membership every month, on or around the 22nd of each month.

40.     Peloton has charged other customers in at least Massachusetts, New York, and Virginia for sales tax on their nontaxable Peloton Memberships despite the commonwealth or state's tax exemption. For example, in New York and Virginia, Peloton Membership subscribers paid $42.47/month for their All-Access Membership subscription, with $3.47/month attributable to sales tax, while customers in Massachusetts paid $41.44/month for their All-Access Membership, with $2.44 attributable to sales tax.

41.     When Peloton Membership subscribers complained to Peloton that they should not be charged sales tax under state law, Peloton's response was misleading:

> We aim for our business practices to be in line with state and local tax requirements and are adjusting our practices to remain compliant. Charging tax on

Digital Memberships is consistent with other subscription businesses like Netflix, Spotify, and Amazon, who also collect sales tax on their subscription services as required by state and local law.

This justification is particularly specious because subscription businesses such as Netflix and Spotify *do not* charge sales tax in Virginia, Massachusetts, or New York for streaming services.[32]

42.     Furthermore, Peloton represented to customers that it continuously reviewed its billing practices in the ordinary course of business to ensure compliance with applicable state and local laws: "As a normal part of our business, we review our practices concerning the taxability of our products and services in order to ensure that we are in compliance with the applicable laws in your state and city."

43.     Yet, despite its ongoing legal compliance review and the clear tax exemption for digital goods in U.S. states such as Massachusetts, New York, and Virginia, Peloton knowingly and willfully continued to overcharge Peloton Membership subscribers in those states on the basis of a purported sales tax when no sales tax was in fact owed.

44.     Peloton continued this overcharging practice through December 2020. Then, despite there being no change in tax law in the relevant states, Peloton finally acknowledged the wrongfulness of its taxation practices and changed its behavior. As of January 1, 2021, Peloton

---

[32] In fact, Massachusetts legislators introduced a bill, HD 4389, in August 2019 to impose taxes on digital streaming providers such as Netflix, Spotify, and Amazon. *See, e.g.*, Law360, *Mass. Bill Seeks 5% Streaming Tax On Digital Entertainment* (Aug. 6, 2019), https://www.law360.com/articles/1185658/mass-bill-seeks-5-streaming-tax-on-digital-entertainment; Commonwealth Magazine, *Bill would hit Netflix, Hulu with fees* (Aug. 1, 2019), https://commonwealthmagazine.org/media/bill-would-hit-netflix-hulu-with-fees/; *see also The Netflix and Spotify tax: States are making streaming services more expensive* (Feb. 24, 2020), https://www.cnbc.com/2020/02/24/states-are-imposing-a-netflix-and-spotify-tax-to-raise-money.html (reporting Massachusetts lawmakers' consideration of digital tax measures). As of the filing of this complaint, that bill has not passed or even come out of committee. *See* 192nd Gen. Ct. of the Commw. Of Mass., *Bill H.4045*, https://malegislature.gov/Bills/191/HD4389 (providing the status of Bill H.D. 4389). As explained above, the Virginia legislature rejected a similar measure, which would have applied to subscription services providers such as Netflix and Spotify. *See supra* ¶ 36 & n.31.

stopped charging sales tax on Peloton Memberships in at least Massachusetts, New York, and Virginia, and potentially other states where digital products are not taxable.

45.     Beginning in January 2021, plaintiffs' monthly All-Access Memberships dropped, from $42.47/month for Skillern and $41.44 for Corken, to $39/month. Peloton has not reimbursed plaintiffs for the unlawful taxes it collected.

46.     Likewise, Peloton has not reimbursed other Class members for the unlawful taxes it collected on their Peloton Memberships.

47.     Despite collecting an improper sales tax from its Massachusetts, New York, and Virginia subscribers through December 2020, Peloton did not remit the tax collected to the commonwealth or state authorities. Rather, it recorded the collected sales tax liability as an accrued expense on its balance sheets.

48.     Indeed, Peloton has acknowledged this in its SEC filings:

[Peloton] has recorded an estimate of $5.7 million and $4.1 million as of June 30, 2018 and 2019, respectively, for the potential sales tax liability associated with its subscription fees, which is included in accrued expenses in the accompanying consolidated balance sheets. [Peloton] continues to analyze possible sales tax exposure but does not currently believe that any individual claim or aggregate claims that might arise will ultimately have a material effect on its results of operations, financial position or cash flows.[33]

49.     Instead, Peloton overcharged subscribers under the guise of a "sales tax" for its own financial benefit and in order to increase its profits.

50.     Peloton's overcharge was material to plaintiffs and all other Class members. For example, plaintiffs and all Class members expected to pay $39/month, plus any *applicable* taxes, for their All-Access Memberships, but Peloton charged them over 6% more each month when no additional taxes were in fact applicable. Moreover, because Peloton Membership charges occur

---

[33] Peloton Interactive, Inc. Form S-1 at F-24 (as filed with U.S. Sec. & Exch. Comm'n on Aug. 27, 2019), https://investor.onepeloton.com/node/6261/html.

automatically on a recurring, monthly basis, and such payment must be remitted at the beginning of the monthly billing cycle, plaintiffs and all Class members were required to pay the improper overcharges in order to maintain their Peloton Membership.

51.     Further, plaintiffs and Class members did not expect Peloton to assess a "sales tax" on their Peloton Membership that is not actually required by law, and they would not have paid the sales tax on their Peloton Membership if such charge had not been included in their monthly bills. Nor would plaintiffs and Class members have agreed to pay over 6% more each month for the same Peloton Membership if they had known that the purported sales tax collected was neither owed under state law nor remitted to state authorities.

## CLASS ACTION ALLEGATIONS

52.     This action is brought by plaintiffs individually and on behalf of a class pursuant to Federal Rules of Civil Procedure 23(b)(3).   The class—referred to herein as the "Breach of Contract Class"—consists of:

> All persons or entities residing in Massachusetts, New York, and/or Virginia who paid tax on a Peloton Membership through December 31, 2020.

53.     Plaintiffs also bring this action individually and on behalf of the following subclasses:

> a.     **Virginia Subclass**. All persons or entities residing in Virginia who paid tax on a Peloton Membership through December 31, 2020.
>
> b.     **New York Subclass**. All persons or entities residing in New York who paid tax on a Peloton Membership through December 31, 2020.

54.     Excluded from the Classes are Peloton; any of its officers, directors, or employees; and its legal representatives, successors, and assigns.

55.     Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses, in connection with her motion for

14

class certification, or at any other time, based on, *inter alia*, changing circumstances and new facts obtained.

56.    Plaintiffs' Classes satisfy the numerosity, ascertainability, commonality, predominance, typicality, adequacy, and superiority requirements of a class action under Rules 23, as alleged more fully below.

57.    **Numerosity**. Plaintiffs do not know the exact number of Class members because that information is in the exclusive control of Peloton. However, Peloton claims to have over 5.4 million subscribers and has sold thousands of Peloton Memberships to Massachusetts, New York, and Virginia customers that were assessed an improper tax in violation of state law. Consequently, members of each Class are so numerous that individual joinder of all Class members is impracticable. Class members and members of each Subclass may be informed of the pendency of this class action through recognized, Court-approved notice dissemination methods, including direct mail or other means based on Peloton's records of its Peloton Membership subscribers.

58.    **Ascertainability**. The Classes are ascertainable through records kept by Peloton. Plaintiffs and Class members were required to provide Peloton with their personal and financial information to purchase Peloton products and subscribe to a Peloton Membership. On information and belief, Peloton records information concerning its customers and their subscriptions in its internal databases. The Classes are thus readily identifiable and sufficiently definite so that it is administratively feasible for the court to determine whether any individual is a Class member.

59.    **Commonality**. There are predominant questions of fact and law common to the Classes. These include, without limitation, the following:

c.    Did Peloton wrongfully overcharge subscribers for their Peloton Membership for supposed tax reasons?

d.    Did Class members overpay for their Peloton Membership as a result of the conduct alleged herein?

e.    Did Peloton's conduct violate state laws?

f.    Did Peloton remit the collected tax overcharge to the appropriate state taxing authority?

g.    Did Peloton act knowingly and/or willfully?

h.    Did Class members pay for their Peloton Membership on a recurring, monthly basis?

i.    Did Peloton breach its Terms of Service and Membership Terms by charging an inapplicable sales tax?

j.    Does Peloton's conduct violate consumer protection statutes, as alleged herein?

k.    Are Class members entitled to damages, restitution, equitable relief, statutory damages, exemplary damages, and/or other relief?

l.    Are Class Members entitled to reasonable attorney's fees and expenses?

60.    **Predominance**. The common questions predominate over any individual issues in the action. Thousands of consumers are impacted by Peloton's unlawful tax charge and their claims arise from a common factual predicate, which is Peloton's improper charge attributable to sales tax that is not owed under state law and the Class members' resulting overpayment. On information and belief, Peloton has charged the so-called tax on a class wide basis, and Class members paid the improper overcharge on a monthly, recurring basis in order to sustain their

Peloton Membership. Additionally, Peloton's Terms of Service is a form, uniform contract is that is common to the Classes, and Peloton's breach is common to the Classes.

61.     **Typicality**. Plaintiffs' claims are typical of the Classes because Plaintiffs and other Class members have the same Peloton membership terms, their losses stem from Peloton's unlawful tax charge and failure to remit to the state the collected tax payment, and their claims arise from the same practices and course of conduct.

62.     **Superiority**. A class action is the superior method for the fair and efficient adjudication of this controversy. Peloton has acted on grounds applicable to the Classes. Individualized litigation would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Peloton, and substantially impair or impede the ability of Class members to protect their interests given that individual claims may be too expensive to litigate.

63.     **Adequacy**. Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of those consumers they seek to represent. Further, plaintiffs have retained competent counsel, who have extensive experience prosecuting complex class litigation including breach-of-contract and consumer-protection class claims. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the resources to do so, and therefore will fairly and adequately protect the interests of the Classes.

64.     Plaintiffs request that the Court afford class members with notice and the right to opt-out of any class certified in this action.

## FIRST CLAIM FOR RELIEF

### Breach of Contract
*(Individually and On Behalf of the Breach of Contract Class)*

65.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

66.     Plaintiffs bring this claim under New York law in accordance with the Terms of Service.

67.     Plaintiffs and the Class accepted and agreed to be bound by Peloton's Terms of Service, including its Membership Terms, when they subscribed to Peloton Membership subscriptions and used their Peloton Bikes, Peloton Treads, and other Peloton products and services.

68.     The Terms of Service, including the Membership Terms, is a binding, enforceable contract between Peloton and Class members, including plaintiffs.

69.     Plaintiffs and the Class paid the monthly Peloton Membership subscription fee on a monthly, recurring basis and therefore performed their obligations under the Membership Terms.

70.     Under the Membership Terms, plaintiffs and the Class agreed to pay "applicable taxes" on their Peloton Memberships on a monthly basis. When Peloton charged plaintiffs and the Class additional monies attributable to sales tax even though the Peloton Memberships were not taxable under and were not imposed by state law, Peloton charged an *inapplicable* tax that plaintiffs and the Class did not agree to pay. Peloton therefore failed to satisfy the terms of the Terms of Service and breached the contract.

71.     As a direct and proximate result of Peloton's breaches, plaintiffs and Class members have sustained damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

**Violation of Virginia Consumer Protection Act**
**Va. Code Ann. § 59.1-196 *et seq.***
*(Individually and On Behalf of the Virginia Subclass)*

72.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

73.     Plaintiffs bring this claim under Virginia law.

74.     The Virginia Consumer Protection Act ("VCPA") prohibits the use of any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(A)(14).

75.     Peloton violated the VCPA by engaging in fraudulent acts and practices in connection with a consumer transaction. Specifically, in connection with the sale of its Peloton Membership subscriptions through December 2020, Peloton unlawfully charged and collected from subscribers in Virginia, including plaintiff Skillern, a false sales tax on their Peloton Memberships when no sales tax was owed on these digital goods under Virginia law.

76.     Peloton represented to Virginia subscribers, including plaintiff Skillern, that their Peloton Memberships cost $39 or $12.99 per month plus *applicable* taxes. Peloton also represented to Virginia subscribers, including plaintiff Skillern, that they were being charged a sales tax on top of their base monthly Peloton Membership fee. However, a sales tax was neither owed under Virginia law nor remitted by Peloton to Virginia taxing authorities, despite its collection.

77.     Moreover, Peloton failed to disclose that Peloton Membership subscriptions were enhanced with a sales tax that was not, in fact, an applicable sales tax.

78.     In reliance on Peloton's uniform misrepresentations and omissions, plaintiff Skillern, like all other Virginia Subclass members, purchased her Peloton Membership

8356678v1/017146

subscription and paid an unlawful tax overcharge every month through December 2020. Skillern, specifically, paid this $3.47 false tax every month on or around the 26th of each month from April 2020, when she moved to Vienna, Virginia, through December 2020. Indeed, under Peloton's Terms of Service, the overcharge *had* to be paid on a recurring, monthly basis at the beginning of each monthly billing cycle in order for subscribers to maintain their Peloton Membership.

79.     Peloton's misconduct harmed Plaintiff Skillern, and all Virginia Subclass members. Plaintiff Skillern, like all Virginia Subclass members, suffered an ascertainable loss when Peloton wrongfully overcharged them for their Peloton Memberships for supposed tax reasons when no tax was owed.

80.     Had the false sales tax not been included in their monthly recurring bills as such, Virginia Subclass members, including plaintiff Skillern, would not have paid the tax overcharge. Additionally, Virginia Subclass members, including plaintiff Skillern, would not have paid nearly 9% more for the same Peloton Membership every month had they known that the assessed sales tax was neither owed under Virginia law nor remitted to state taxing authorities.

81.     As a result of Peloton's misconduct, all Virginia Subclass members paid more for their Peloton Memberships than the subscriptions were worth and more than the Peloton Memberships were represented to cost.

82.     When Peloton was alerted to its misconduct, it misrepresented the lawfulness of its billing and taxation practices despite its ongoing review of state and local law, supposedly in order to ensure legal compliance with such laws. Instead, Peloton knowingly and unlawfully continued to overcharge its members a false tax on their Peloton Memberships when such tax was actually prohibited under Virginia law.

83.     Peloton did not remit the collected "tax" surcharge to Virginia state taxing authorities and instead recouped the payment for its own financial benefit. Nor has Peloton refunded plaintiff Skillern or, on information and belief, any other Virginia Subclass member for the wrongfully collected overcharge.

84.     Peloton's conduct alleged herein was knowing and willful and made with the intent to deceive or otherwise mislead Virginia consumers.

85.     Pursuant to § 59.1-204(A) of the VCPA, Plaintiffs and the Class members seek actual damages or statutory damages of $500 per violation, whichever is greater; treble damages or $1,000 per violation, whichever is greater; and reasonable attorney's fees and costs.

### THIRD CLAIM FOR RELIEF

**Violation of New York General Business Law § 349**
*(Individually and On Behalf of the New York Subclass)*

86.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

87.     Plaintiffs bring this claim under New York law.

88.     New York's General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. G.B.L. § 349(A).

89.     Peloton violated § 349 by engaging in deceptive acts and practices. Specifically, Peloton unlawfully charged and collected a sales tax on all of its Peloton Memberships belonging to New York subscribers, including Plaintiff Skillern, despite the fact that such tax assessment is unlawful under New York state law. Plaintiff Skillern, specifically, paid this $3.47 false tax every month while living in New York, on or around the 26th of each month, from January 2019 through March 2020.

90.     Additionally, Peloton did not remit the collected "tax" surcharge to New York state taxing authorities and instead recouped the payment for its own financial benefit.

21

91.     Peloton engaged in this misconduct on a standard and routine basis, affecting a significant number of similarly situated customers—namely, all Peloton Membership subscribers residing in New York.

92.     Peloton represented to Plaintiff Skillern and New York Subclass members that they were being charged a sales tax on their Peloton Membership when no sales tax was owed. Peloton further failed to disclose that it was not authorized to collect such taxes under state law, and indeed actively misled consumers that its tax collection practice was lawful when it was not. Accordingly, Peloton's practices are likely to mislead a reasonable consumer and therefore were materially misleading.

93.     Peloton's conduct alleged herein was knowing and willful.

94.     All New York Subclass members, including plaintiff Skillern, suffered ascertainable losses that necessarily flowed directly from Peloton's fraud and deceit in its scheme to systematically charge subscribers more than the Peloton Membership subscriptions they purchased were worth.

95.     Plaintiffs and the New York Subclass members seek actual damages or statutory damages of $50 per violation, whichever is greater; treble damages; punitive damages; and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Brannon Skillern and Ryan Corken, individually and on behalf of all others similarly situated, request this Court award relief against Peloton as follows:

1.     That the Court enter an order certifying the Classes, appointing plaintiffs as class representatives, appointing plaintiffs' counsel as class counsel, and directing that reasonable

notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the

Classes;

2.      For a judgment against Peloton for the claims for relief alleged against it;

3.      For monetary damages in an amount to be determined at trial;

4.      For treble damages;

5.      For punitive damages;

6.      For all pre-judgment and post-judgment interest at the maximum rate allowable

by law;

7.      For plaintiffs' attorney's fees;

8.      For plaintiffs' costs incurred; and

9.      For such further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiffs demand a trial by jury on all

claims asserted in this complaint so triable.


Dated: August 12, 2021


*/s/ Seth Ard*
Seth Ard
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel.: 212-336-8330
Fax: 212-336-8340
sard@susmangodfrey.com

Steven G. Sklaver *(pro hac vice* to follow)
Krysta Kauble Pachman *(pro hac vice to follow)*
Jesse-Justin Cuevas *(pro hac vice to follow)*
SUSMAN GODFREY L.L.P.

1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com
kpachman@susmangodfrey.com
jcuevas@susmangodfrey.com

*Attorneys for Plaintiff*