UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: :

SKILLERN, BRANNON, et al., : Docket #1:21-cv-06808-ER

Plaintiff, :

- against - :

PELOTON INTERACTIVE, INC., : New York, New York
November 2, 2021

Defendant. :

TELEPHONE CONFERENCE

------------------------------------- :

PROCEEDINGS BEFORE
THE HONORABLE EDGARDO RAMOS,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiffs: SUSMAN GODFREY LLP
BY: JESSE-JUSTIN CUEVAS, ESQ.
KRYSTA KAUBLE PACHMAN, ESQ.
1900 Avenue of the Stars - Suite 1400
Los Angeles, California 90067

For Defendant: LATHAM & WATKINS
BY: MICHAEL BERN, ESQ.
JEAN PAWLOW, ESQ.
GREGORY B. IN DEN BERKEN, ESQ.
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004

Transcription Service: Carole Ludwig, *Transcription Services*
155 East Fourth Street #3C
New York, New York 10009
Phone: (212) 420-0771
Email: Transcription420@aol.com

Proceedings conducted telephonically and recorded by electronic sound recording;
Transcript produced by transcription service

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

HONORABLE EDGARDO RAMOS (THE COURT): Good morning, everyone. This is Judge Ramos. Jasmine, please call the case.

THE CLERK: In the matter of Skillern et al versus Peloton. Counsel, please state your name for the record, starting with counsel for plaintiffs.

MS. JESSE-JUSTIN CUEVAS: Jesse-Justin Cuevas with Susman Godfrey for plaintiffs. And also on the line with me today is Krysta Kauble Pachman from Susman Godfrey.

MR. MICHAEL BERN: Good morning, your Honor. This is Michael Bern for defendant Peloton. With me are my colleagues, Jean Pawlow and Greg in den Berken.

THE COURT: And good morning to you all. This matter is on for a pre-motion conference. I note for the record that it is being held by telephone. This is also the first time that the parties have appeared before me. So, Ms. Cuevas, let me begin with you. Why don't you tell me a little bit about your case?

MS. CUEVAS: Certainly, your Honor. Jesse-Justin Cuevas for plaintiffs. Our allegations present a straightforward case about Peloton's unlawful overcharges for its digital membership subscription, and plaintiffs' claims clearly belong in this court. I believe that the Court would like a little bit of background on the allegations, if I'm

not mistaken, so I'll jump right into that unless your Honor would like me to turn to some of the issues raised by Peloton's letter motion.

THE COURT: No, no, you can tell me a little bit about the case.

MS. CUEVAS: Certainly. So, for at least 23 months Peloton overcharged consumers in Massachusetts, New York, and Virginia, on the digital membership subscription to its library of online, at-home exercise classes. And as alleged in the Complaint, Peloton charged and collected an additional fee -- this is between two and four dollars or six and nine percent, depending on the state -- on top of a subscription's monthly base price under the guise of a sales tax, despite no tax being either permitted under state law or remitted to taxing authorities. And even after Peloton corrected its behavior beginning in January of 2021, Peloton never reimbursed consumers for the sales tax that it collected. Unless the Court has additional questions on this background, I'd like to turn to the arguments that counsel for the other side has made in its letter motion. It's a pretty straightforward case that we have here from plaintiffs' perspective.

THE COURT: Sure. Go ahead.

MS. CUEVAS: Certainly. So I think they're best

considered -- Peloton's arguments are really best considered in two separate categories, first, a proposed motion to compel arbitration and, second, the proposed grounds for dismissal. And I'll turn first to the arbitration argument.

So this is not a case with an obviously applicable consumer arbitration agreement, as Peloton would have the Court believe. And we've opposed Peloton's letter motion in part to correct the record on that issue. Instead, this is a case where clearly no arbitration provision governs the parties' claims.

As an initial matter, Peloton is currently litigating in this district a putative class action of overlapping New York purchasers of Peloton membership subscriptions that are governed by the very same arbitration provision presented in our Complaint. That's the Fishon case, number 1:19-cv-11711, pending before Judge Liman. Peloton never sought arbitration in that case and instead -- and here I'm relying on the transcript of a hearing at docket 39 in that case -- counsel for plaintiffs there initially did file individual arbitration under the governing 2018 Terms of Service; but when Peloton refused to pay the American Arbitration Association fees in accordance with the AAA rules and Peloton's own arbitration

provision, the AAA declined to let the individual arbitration to proceed and permitted the claims to be litigated in court, stating further that the AAA would not consider or preside over any additional claims brought by or against Peloton and asking Peloton to remove reference to the organization in its arbitration provision.

We attached the AAA's letter as Exhibit 2 to our Complaint; that's docket 1-2. And as alleged in our Complaint, Peloton defied the AAA's directive, invalidating the arbitration provision in that Terms of Service. So, as a result, even if plaintiff assented to any arbitration agreement, which we do dispute here, the 2018 arbitration provision in effect when plaintiffs purchased the Peloton membership subscriptions at issue here, it contains that offending reference to the AAA and is therefore unenforceable. And, really, Peloton's decision to litigate the claims of overlapping New York customers in the Fishon case underscores the invalidity of the arbitration provision in that Terms of Service.

And while Peloton's letter motion raises reliance on a subsequent arbitration provision in a later version of its Terms of Service, we contend that really doesn't move the needle on arbitration at all, and here's why. It's black letter law that a party can't be forced to arbitrate

any claim it didn't agree to submit to arbitration. Now, Peloton's letter motion asserts that plaintiffs agreed to an updated Terms of Service in or around the spring of 2020, the letter motion states, over 18 months ago or about 18 months ago. But then Peloton's letter only references the current Terms of Service that were last updated in June of 2021. So right off the bat, your Honor, Peloton has not demonstrated that it can meet its initial burden of showing the existence of an Agreement to Arbitrate as to necessitate motion practice here.

And, really, Peloton's inability to carry its initial burden on arbitration is particularly true with plaintiff Ryan Corken. Before Peloton filed its request for a pre-motion conference, we've had some informal back-and-forth with counsel for Peloton; and during those informal exchanges, Peloton claimed not to have any records that Mr. Corken ever entered into any arbitration agreement 18 months ago or otherwise. So his claims certainly belong in federal court. And unless the Court has -- excuse me -- and even if there were this existing intervening Terms of Service that was updated at some point between 2018 and 2021, which we haven't seen, Peloton didn't effectively modify the 2018 Terms of Service arbitration provision terms because it failed to send an email

notifying plaintiffs of the change, which is expressly required by the 2018 Terms of Service in Section 20-f.

So unless the Court has additional questions about the arbitration issues that are presented in Peloton's letter motion, I'd like to turn to some of the grounds for dismissal that were proposed in that letter.

THE COURT: Please do.

MS. CUEVAS: Sure. So Peloton -- turning first to the class waiver grounds for dismissal here, Peloton's waived enforcement of that provision. As I mentioned before, Peloton is currently litigating a putative class action in this district involving an overlapping proposed class of New York consumers that are governed by the very same Terms of Service that are alleged in our Complaint with the very same class waiver provision. And, again, that's the Fishon case. And importantly, in its multiple motions to dismiss the Fishon claims, Peloton never sought to enforce the class waiver provision outside of arbitration, and it never argued that the Southern District of New York lacked federal jurisdiction over the claims because of the class waiver and any primarily state law issues raised in that case.

And Peloton's litigation conduct in the Fishon case not only demonstrates the waiver of -- its decision to

waive enforcement of the class waiver provision in the Terms of Service, but it also supports the plain language reading that we have put forth in our letter opposition. The Terms of Service plain terms expressly accept the class waiver provision from severability -- and that's in Section 20-g of the Terms of Service attached to our Complaint, Exhibit 1, docket 1-1. And, further, Peloton included a blow-up clause in the class waiver itself that nullifies the provision outside of arbitration. So it's really clear in this case that Peloton never intended to avoid class litigation, only class arbitration.

And this is consistent with the case, the *Meyer v. Kalanick* case that we've put forth in our letter motion -- that's 185 F. Supp. 448, for the Court. That's a Southern District of New York case. Judge Rakoff there found instructive in a different -- and that case involved a Terms and Conditions in an Uber Terms and Conditions for consumers. And the Court there found Uber's litigation conduct in a different case pending in a different district in that instance that involved the same Terms and Conditions as supportive of the Court's plain language interpretation, which similarly found that a class waiver provision within an arbitration provision, in light of the context of that location and other plain language

interpretations of that class waiver provision, that it didn't give rise to an independently operative class waiver. And that's really the same -- that's the same result that should occur here.

And I'll turn next to the administrative remedies argument that Peloton's letter motion suggests provides grounds for dismissal. Peloton's overcharging misconduct here really does not fall within the scope of any state administrative remedy requirements. As our Complaint alleges, Peloton overcharged consumers for its monthly membership subscriptions but never -- called that overcharge a tax but then never submitted that collected overcharge to state taxing authorities in part because no tax was ever owed and because also Peloton wanted to reap the financial gains of that overcharge. In fact, Peloton's SEC filings affirmatively provide that it collected money as a potential tax liability on the subscription fees but never remitted those fees because it didn't believe it had tax liability in those instances.

So this really is not a case where the plaintiffs here allege any state-imposed tax or where plaintiffs have a viable recourse by appealing to state or local taxing authorities for a refund, and that's precisely what Judge Cote of this district held in the *Porsche v. LLR, Inc.*

Again, for the Court, that is 380 F. Supp. 3d 418, a Southern District of New York case decided in 2019. There, the retailer defendant never submitted a collected overcharge, as here labeled as a tax, to New York state or local taxing authorities, which foreclosed the operation of any exclusive remedies requirement of the New York tax law. And the same is true here.

So Peloton's administrative remedies arguments really are meritless. We've pointed to the plain language of the Massachusetts General Laws Section 41, which is conspicuously absent from Peloton's letter motion, which plainly states that the administrative remedies provided there don't deprive anyone of a right of action at law in the courts. It's just that that principle is supported by the cases that Peloton cited in its letter motion, the *Ace Property & Casualty Insurance Company vs. Commissioner of Revenue* case in fact provides the Courts have discretion to consider exceptions to general exhaustion rules, in that case concerning declaratory judgment action, and the Court there actually exercised that discretion and did not dismiss for failure to exhaust administrative remedies.

Similarly, as we set forth in our letter motion, the Virginia Code section that Peloton relies on concerns an erroneous amount of state-imposed tax. And that's not

what we're alleging here. We're not merely challenging an amount of state-imposed tax based on an improper taxing jurisdiction or sourcing rule determination. This is a situation where Peloton overcharged consumers, labeled that attack and then kept the money for itself to deceive consumers when no tax was actually owed or imposed by law or even remitted to the Commonwealth.

And for much the same reason that the case doesn't fall subject to the administrative remedies exhaustion requirements that we've explained, this isn't a case that falls within the Tax Injunction Act because plaintiffs here are not challenging state tax assessments, we're not challenging the constitutionality of any state taxing scheme or really any state action at all. The challenged conduct here is overcharging between private parties that does not belong in the administrative agency scheme set forth in the states at issue here.

So unless the Court has any questions, I think that's really where we stand and why we think that motion briefing is not warranted here on either the proposed motion to compel arbitration or the proposed motion to dismiss.

THE COURT: Thank you, Ms. Cuevas.

We only have until ten-thirty. I probably

should have led with that. But let me turn to Mr. Bern.

MR. BERN: Thank you, your Honor. And I'll try and be relatively brief.

So I think -- we certainly disagree with plaintiffs' characterization of the facts. But I think the more important issue is that we think that this is a case that doesn't belong in federal court for multiple reasons. And I'll try to briefly kind of go through some of those reasons and why we think motion practice is warranted here.

First of all, this is a dispute that we think should be resolved by an arbitrator. Plaintiffs have acknowledged in their response to our pre-motion conference letter that they did agree to resolve disputes with Peloton by binding individual arbitration. Now, in their Complaint they've argued that that agreement is not enforceable against Peloton because an older version of Peloton's Terms of Service envisioned that arbitration would be conducted by the American Arbitration Association, and plaintiffs have argued that the AAA later indicated that it did not wish to perform arbitrations involving Peloton.

There's no dispute, however, the Peloton updated its Terms of Service in December 2019 to specify that arbitrations shall be conducted by JAMS, not the AAA. And

there's no allegation that JAMS is unwilling or unable to arbitrate this dispute. As a result, plaintiffs should be compelled to arbitrate. Now, the --

THE COURT: Let me just stop you, Mr. Bern. Ms. Cuevas relied a great deal on the Fishon case before Judge Liman. How is that case different from this one, if at all?

MR. BERN: Yes, so we don't think that the Fishon case is relevant for a couple of reasons. I mean, first of all, I think plaintiff herself indicated that the Fishon case was under that older Terms of Service under the Terms of Service in which the American Arbitration Association was implicated. We think the governing arbitration agreement here is the one that provides that arbitration shall be conducted by JAMS. And that arbitration clause has been enforced by other courts since the Fishon case has been in existence. In addition, whatever the parties have decided in the Fishon case certainly doesn't govern the application of an arbitration clause in this instance. There's no allegation that, you know, plaintiffs were named parties in the Fishon case or that there was any sort of decision that was made with respect to plaintiffs. But I think the main point here is that we're talking about a different arbitration agreement that plaintiffs have agreed

to and that governs here and that there's no argument that that arbitration agreement isn't enforceable.

THE COURT: Was it effectively communicated to the Peloton customers?

MR. BERN: Right. So plaintiffs -- right, so the only argument that we understand plaintiffs to have made as to why that updated Terms of Service shouldn't be binding here is the claim that Peloton failed to notify plaintiffs by email about the updated December 2019 terms when Peloton adopted them. But, as this Court is aware, in resolving a motion to compel arbitration, it's appropriate not only to consider the pleadings but to consider evidence submitted by the parties. And here in connection with Peloton's motion to compel arbitration, we would submit records showing that we did in fact send emails to plaintiffs notifying them of the updated December 2019 terms. And more fundamentally, when Peloton rolls out certain updates to its Terms of Service, it also notifies its members of those updates directly on the Peloton bike, tread or app and requires members to specifically agree to those updated terms in order to continue using Peloton's services. That's what happened in December 2019. And again in connection with its motion, Peloton will submit affidavits and records that confirm that plaintiffs specifically

agreed to Peloton's updated December 2019 terms, which included the agreement that disputes shall be arbitrated by JAMS.

THE COURT: So if you don't agree to the new terms, you can't do your workout?

MR. BERN: That's correct, you can't use the bike, the tread or the app going forward; that's correct.

THE COURT: Okay.

MR. BERN: You know, the only other argument I heard plaintiffs make with respect to the arbitration agreement was the suggestion that plaintiff Corken might not have agreed to the agreement to arbitrate. We did engage in some communications with plaintiffs, you know, over the last several months, you know, in advance of the pre-conference motion letter, and plaintiffs indicated to us that -- basically provided to us account information for plaintiff Corken's account. We have been relying on that information in finding that there was an account and that that account agreed to the agreement to arbitrate. If plaintiff is now taking the position that plaintiff Corken is not associated with the account that they told us was in fact Corken's account, then I think the bigger problem for plaintiff would be that, you know, there would be no agreement to Peloton's Terms of Service and nothing to sue

on in this case. You know, the only claim that plaintiff Corken is bringing is a breach of contract claim. So if plaintiff didn't agree to the contract, then it's hard to understand on what basis plaintiff could maintain any action in this case. But, again, we've been relying on what plaintiff provided to us, which was an account number with which we did find records indicating that both there was an email notification of the updated December 2019 terms and an express agreement to those December 2019 terms.

So that's, I think, the story with respect to arbitration, and we think that ultimately this is a straightforward instance in which a motion to compel arbitration should be granted. And of course, you know, this is also a case in which the agreement to arbitrate specifies that threshold questions of arbitrability should be resolved by the arbitrator in the first instance. And so that's, again, another indicia for why the motion to compel arbitration should be granted.

I'll try and briefly address the merits arguments, you know, recognizing that the function presumably of this pre-motion conference isn't to resolve the merits but just to resolve the question of whether it makes sense to continue with motion practice. You know, I think the first

point is that, you know, plaintiffs have agreed to a class action waiver. You know, plaintiffs agree in their Complaint that they agree to Peloton's Terms of Service and that those Terms of Service are binding. The Terms of Service, even the outdated September 2018 Terms of Service that plaintiffs attached to their Complaint, include an agreement to waive the right to participate in a class action lawsuit or class-wide arbitration. And if plaintiffs can't bring this case as a class action, their individual claims obviously don't satisfy the jurisdictional threshold to be in federal court.

Now, I understand plaintiffs' argument to be that Peloton's Terms of Service provide that if the arbitration agreement is found to be unenforceable, then the class action waiver falls, as well. And, second, I understand them to argue that the class action waiver is only applicable in the context of arbitration. But I think that ultimately plaintiffs are just misreading the text of the Terms of Service themselves. First of all, unlike the Terms of Service in the other cases that the plaintiffs want to rely on, the Terms of Service in this instance expressly provide that they don't simply apply to arbitration but also in the context of a class action lawsuit. And, again, you can just look at page one of the

Terms of Service attached to plaintiffs' Complaint, which specifically say that plaintiffs, quote, "waive the right to participate in a class action lawsuit or class-wide arbitration." And so it's clear that the class action waiver extends beyond the arbitration context to the context of a lawsuit here.

And then second, I guess with respect to severability, we think that plaintiffs are just misreading the terms. What the terms provide is that if part of the arbitration agreement is found unenforceable -- if part of Section 20 is found unenforceable, then all of the remainder of the provisions within Section 20, including the class action waiver, would continue to be enforceable. What it does separately provide is that if the class action waiver itself is found unenforceable, then the rest of Section 20, including the agreement to arbitrate, would be severable or would be taken away, as well. So it works sort of backwards from what plaintiffs are suggesting; it's only if the class action waiver itself was found to be unenforceable that the remainder of the provisions addressing arbitration would also go away. But if as here plaintiffs simply argue that the arbitration agreement is unenforceable for some reason, even if they were right, the class action waiver would still stand.

You know, finally, I just want to address the two tax-based arguments. As we would explain in our motion, as a general rule, federal courts do generally abstain from cases that challenge state taxation schemes on the basis that those claims are more appropriately resolved in state court. And that's particularly appropriate, you know, in cases like this where, you know, you're dealing with taxation issues, which really do raise, you know, challenging gray-area issues that are better resolved in the first instance by state courts. And part of the rationale for those doctrines is that there's a recognition that, you know, for federal courts to interfere in these areas really does jeopardize the states' administration of and collection of revenue.

You know, here plaintiffs argue that all of those policies are off the table because Peloton allegedly didn't remit the taxes it collected to the states. You know, first of all, that's simply incorrect. Of course, Peloton was remitting the taxes to the states. But even leaving that aside, the same policies are still implicated either way. What plaintiffs are asking this Court to do is essentially to find that as a matter of New York, Massachusetts or Virginia law, the state taxation schemes do not allow the states to collect tax in certain

circumstances. And if that is in fact the case, then what that would mean is not only would other states be unable to collect taxes from Peloton, but it would be unable to collect taxes from any number of other similarly situated companies; and presumably, the states could be forced to refund claims that were made by consumers from whom taxes were collected by any of those companies. That clearly does have an effect on the state's administration of its revenue, and it's exactly the kind of issues that the comity doctrine suggests and the Tax Injunction Act suggests should be resolved by states in the first instance when there's an adequate remedy at state law. And here certainly there's no argument that there isn't an adequate remedy at state law. And we pointed to the fact that, you know, all the states here do have procedures that require plaintiffs to exhaust certain procedures under state law before proceeding to federal court.

I'll just point out briefly that, you know, plaintiffs have argued that these exhaustion regimes aren't applicable here because of their allegation that plaintiffs or that Peloton, you know, supposedly didn't remit the taxes to the state courts. But that's been an argument that's been tried in other cases, and courts have rejected it. I'll point this Court to the *Togood v. Forever 21*,

*Inc.* case, which is 285 F. Supp. 3d 643, a Southern District case from 2018. The exact argument was made here that, you know, that the exhaustion principles don't apply because, quote, "defendants have not remitted the collected monies to the New York Department of Taxation." And the Court explained why that argument doesn't hold water, and plaintiffs were still required to try and exhaust before the state authorities.

So we would obviously elaborate on all of these issues more if we get into motion practice, but from our standpoint we think that we've got strong arguments for why this case doesn't belong in court, why it should be arbitrated, and why even if the case -- even if this Court were to disagree, why the case can't stay in federal court. And we would respectfully ask for the opportunity to present those arguments in a motion.

THE COURT: Thank you, Mr. Bern.

You know, this is the first time that I'm actually recording conferences rather than having a court reporter. And it's a very good thing, because I think this is the most words per minute of any conference that I've ever had.

But, you know, I can't on the papers before me determine that there is no colorable basis for the motions, so I will allow Peloton to make the motion. It will be

done on the following schedule. Peloton's motion will be due three weeks from now, on November 23. The response will be due three weeks after that, on December 14. And the reply, a week later, on December 21.

And with that, that is all the time we have, folks. We are adjourned. Everyone please stay well.

(Whereupon, the matter is adjourned.)

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Skillern et al v. Peloton Interactive, Inc., Docket #21-cv-06808-ER, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature________Carole Ludwig________

Carole Ludwig

Date: November 3, 2021