# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANNON SKILLERN and RYAN CORKEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>Defendant. | Case No. 21-cv-6808-ER |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFFS' CLAIMS

Jean A. Pawlow (admitted *pro hac vice*)
Michael E. Bern (admitted *pro hac vice*)
Gregory B. in den Berken (admission *pro hac vice* pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Phone:   (202) 637-2200
Fax:       (202) 637-2201
Email:    jean.pawlow@lw.com
              michael.bern@lw.com
              greg.indenberken@lw.com

Steven N. Feldman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Phone:   (212) 906-1200
Fax:       (212) 751-4864
Email:    steve.feldman@lw.com

William J. Trach (admitted *pro hac vice*)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Phone:   (617) 948-6000
Fax:       (617) 948-6001
Email:    william.trach@lw.com

*Counsel for Defendant Peloton Interactive, Inc.*

November 23, 2021

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

STATEMENT OF ALLEGED FACTS ................................................................................2

    I.      The Peloton Terms Of Service ...............................................................................2

    II.    Plaintiffs' Agreement To The Peloton Terms Of Service .......................................5

    III.   Plaintiffs' Complaint ..............................................................................................6

ARGUMENT .......................................................................................................................7

    I.      PLAINTIFFS MUST ARBITRATE THEIR CLAIMS .........................................7

          A.     The Parties Entered Into A Valid Agreement To Arbitrate ........................9

          B.     Plaintiffs' Claims Fall Within The Scope Of The Arbitration
               Agreement And The Arbitrator Must Resolve Any Contrary
               Argument .................................................................................................13

          C.     Because All Of Plaintiffs' Claims Are Subject To Arbitration, This
               Court Should Dismiss The Complaint ......................................................14

    II.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS
        PLAINTIFFS' CLAIMS ....................................................................................15

          A.     Because Plaintiffs Waived The Right To Bring A Class Action, This
               Court Cannot And Should Not Exercise Jurisdiction ...............................15

          B.     Plaintiffs Also Fail To State Claims On Which Relief Can Be
               Granted ....................................................................................................18

              1.     The Tax Injunction Act And Related Comity Doctrine Bar
                     Plaintiffs' Claims ........................................................................18

              2.     Plaintiffs' New York Claims Should Be Dismissed For
                     Failure To Exhaust Administrative Remedies ..............................20

              3.     Plaintiffs' Massachusetts And Virginia Claims Also Fail ............23

                   a.     Plaintiffs Have Not Alleged That They Filed Claims
                         For Refunds In Massachusetts ...........................................23

                   b.     Plaintiffs' Virginia Claims Should Be Dismissed For
                           Failure To Notify Peloton Before Bringing Suit ................24

CONCLUSION ...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
  307 F.3d 24 (2d Cir. 2002) ................................................................. 13

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011) ............................................................. 8, 13

*Arciniaga v. Gen. Motors Corp.*,
  460 F.3d 231 (2d Cir. 2006) .................................................................. 8

*Arrigo v. Blue Fish Commodities, Inc.*,
  704 F. Supp. 2d 299 (S.D.N.Y. 2010) .................................................. 14

*Bensadoun v. Jobe-Riat*,
  316 F.3d 171 (2d Cir. 2003) ................................................................... 8

*Bernard v. Village of Spring Valley*,
  30 F.3d 294 (2d Cir. 1994) ................................................................... 18

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ................................................................. 16

*Camilo v. Uber Techs., Inc.*,
  2018 WL 2464507 (S.D.N.Y. May 31, 2018) ...................................... 16

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ........................................................................ 17, 18

*Cohen v. Avanade, Inc.*,
  874 F. Supp. 2d 315 (S.D.N.Y. 2012) .................................................. 16

*Cohen v. Hertz Corp.*,
  2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ...................................... 21

*Cohen v. Postal Holdings, LLC*,
  873 F.3d 394 (2d Cir. 2017) ................................................................. 18

*Contec Corp. v. Remote Sol. Co.*,
  398 F.3d 205 (2d Cir. 2005) ................................................................. 14

*Davidson v. Rochester Tel. Corp.*,
  163 A.D.2d 800 (N.Y. App. Div. 1990) ............................................... 22

*Doctor's Assocs., Inc. v. Stuart,*
    85 F.3d 975 (2d Cir. 1996)..................................................................15

*Dorce v. City of New York,*
    2 F.4th 82 (2d Cir. 2021) ...................................................................19

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018).........................................................................8

*Estler v. Dunkin' Brands, Inc.,*
    691 F. App'x 3 (2d Cir. 2017) ............................................................21

*F5 Capital v. Pappas,*
    856 F.3d 61 (2d Cir. 2017)..................................................................17

*Fredrickson v. Starbucks Corp.,*
    840 F.3d 1119 (9th Cir. 2016) ............................................................19

*Freeport-McMoRan, Inc. v. K N Energy, Inc.,*
    498 U.S. 426 (1991) (per curiam) .......................................................17

*Gen. Dynamics Corp. v. Bd. of Assessors of Quincy,*
    444 N.E.2d 1266 (Mass. 1983) ...........................................................24

*Gilbert v. Home Depot,*
    2014 WL 4923107 (W.D.N.Y. Sept. 30, 2014) ...................................21

*Gold v. N.Y. Life Ins.,*
    193 A.D.3d 454 (N.Y. App. Div. 2021) ..............................................16

*Guterman v. Costco Wholesale Corp.,*
    927 F.3d 67 (2d Cir. 2019)..................................................................21

*Guyden v. Aetna, Inc.,*
    544 F.3d 376 (2d Cir. 2008)................................................................13

*Gwozdz v. HealthPort Techs., LLC,*
    846 F.3d 738 (4th Cir. 2017) ..............................................................19

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    139 S. Ct. 524 (2019).........................................................................14

*Horton v. Dow Jones & Co.,*
    2019 WL 952314 (S.D.N.Y. Feb. 27, 2019)..................................16, 17

*Joseph v. Hyman,*
    659 F.3d 215 (2d Cir. 2011)...........................................................18, 19

*Kolari v. New York-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006)..................................................................................18

*Kupferstein v. TJX Cos.*,
   2017 WL 590324 (E.D.N.Y. Feb. 14, 2017)...................................................21, 22

*Leger v. Adams*,
   1994 WL 879587 (Mass. Super. Ct. July 15, 1994) ...............................................24

*Levin v. Com. Energy, Inc.*,
   560 U.S. 413 (2010)................................................................................................18

*Louis v. Comm'r of Soc. Sec.*,
   2010 WL 743939 (S.D.N.Y. Mar. 2, 2010) ............................................................20

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)...................................................................................20

*McGonagle v. Home Depot U.S.A., Inc.*,
   915 N.E.2d 1083 (Mass. 2009) ...............................................................................24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)................................................................................................8, 13

*Nechis v. Oxford Health Plans, Inc.*,
   421 F.3d 96 (2nd Cir. 2005)...................................................................................16

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016).....................................................................................8

*NPS Commc'ns, Inc. v. Cont'l Grp.*,
   760 F.2d 463 (2d Cir. 1985)...................................................................................14

*O'Callaghan v. Uber Corp. of Cal.*,
   2018 U.S. Dist. LEXIS 112021 (S.D.N.Y. July 3, 2018) .......................................10

*Ralph Lauren Corp. v. U.S. Polo Ass'n*,
   2014 U.S. Dist. LEXIS 123968 (S.D.N.Y. Sept. 4, 2014).......................................8

*Ranieri v. Bell Atl. Mobile*,
   304 A.D.2d 353 (N.Y. App. Div. 2003) .................................................................16

*Raymond v. Mid-Bronx Haulage Corp.*,
   2017 WL 9882601 (S.D.N.Y. June 10, 2017) ........................................................11

*Román v. Spirit Airlines*,
   482 F. Supp. 3d 1304 (S.D. Fla. 2020) ..................................................................17

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)................................................................8

*Shearson/Am. Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987)..................................................................14

*Smith/Enron Cogeneration Ltd. P'ship, v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)............................................................11

*Spencer-Franklin v. Citigroup/Citibank N.A.*,
    2007 WL 521295 (S.D.N.Y. Feb. 21, 2007)................................................15

*Togut v. Forever 21, Inc.*,
    285 F. Supp. 3d 643 (S.D.N.Y. 2018)..................................................22

*Tsadilas v. Providian Nat'l Bank*,
    13 A.D.3d 190 (N.Y. App. Div. 2004) .................................................16

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966)....................................................................17

*Valle v. ATM Nat'l, LLC*,
    2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ............................................11

*Weber v. Quest Diagnostics of Pa., Inc.*,
    2020 WL 6372382 (W.D.N.Y. Oct. 29, 2020) ..........................................18

*Williams v. Joseph Dillon & Co.*,
    243 A.D.2d 559 (N.Y. App. Div. 1997) ...............................................12

## STATUTES & RULES

9 U.S.C. § 2...............................................................................8

9 U.S.C. § 3..............................................................................14

28 U.S.C. § 1332(d)(2) ....................................................................15

28 U.S.C. § 1341......................................................................18, 19

Mass. Gen. Laws Ann. Chapter 62C § 37....................................................23

Mass. Gen. Laws Ann. Chapter 93A .........................................................24

N.Y. Tax Law § 1139 ................................................................20, 21, 22

N.Y. Tax Law § 1139(a) ...................................................................21

N.Y. Tax Law § 1140 ......................................................................21

Va. Code Ann. § 58.1-648(C) .............................................................................................25

Va. Code Ann. § 58.1-652 ................................................................................................25

Fed. R. Civ. P. 12(b)(1) ...................................................................................................20

Fed. R. Civ. P. 12(b)(6) ...................................................................................................20

## OTHER AUTHORITIES

Peloton Interactive, Inc., Registration Statement (Form S-1) (Aug. 27, 2019),
     https://investor.onepeloton.com/node/6261/html ............................................22, 23

*Peloton Terms of Service*, Peloton,
     https://www.onepeloton.com/terms-of-service (last updated June 21, 2021).........................12

*Streamlined Arbitration Rules & Procedures*, JAMS, https://www.jamsadr.com/rules-
     streamlined-arbitration/#Rule-8 (effective June 1, 2021).......................................14

## INTRODUCTION

Peloton Interactive, Inc. ("Peloton") is the largest interactive fitness platform in the world with a loyal community of over 5.9 million members.  In this case, two asserted Peloton members allege that Peloton improperly charged sales tax to Massachusetts, New York, and Virginia customers on their Peloton membership subscriptions prior to December 31, 2020.  Plaintiffs claim that in so doing, Peloton breached the contract into which it enters with its members (Peloton's Terms of Service) and violated New York's and Virginia's consumer-protection statutes.

Plaintiffs seek to pursue those claims via a class action in federal court.  But Plaintiffs' claims do not belong in federal court for multiple reasons.  First, as Plaintiffs admit, Peloton's Terms of Service specify that Peloton members must resolve any dispute arising from the Terms of Service or their alleged breach by individual arbitration.  *See, e.g.*, ECF No. 1 ("Compl.") ¶ 29; ECF No. 1-1 § 20.  Plaintiffs try to avoid arbitration by alleging that the American Arbitration Association ("AAA")—the party envisioned to conduct the arbitration under an older, September 14, 2018 version of Peloton's Terms of Service—is unwilling to conduct arbitrations involving Peloton.  Compl. ¶¶ 29-32.  But Peloton adopted updated Terms of Service on December 27, 2019, which removed AAA and provided instead that JAMS shall conduct arbitrations between Peloton and its members.  And Peloton's account records confirm that Plaintiffs ***agreed to those updated Terms***, including the updated arbitration clause, over 18 months ago.  Under settled Second Circuit law and the Terms of Service themselves, Peloton's updated Terms control.  This Court should thus grant Peloton's motion to compel arbitration.

Even if Plaintiffs were not obligated to arbitrate their claims (they are), dismissal would still be necessary.  Plaintiffs admit that both they and the putative class "accepted and agreed to be bound by Peloton's Terms of Service" and that the Terms of Service "is a binding, enforceable

contract between Peloton and Class members, including plaintiffs." Compl. ¶¶ 67-68. Those binding Terms of Service—including the September 2018 version that Plaintiffs attach to their complaint—expressly include a "**CLASS ACTION WAIVER**" specifying that Plaintiffs may bring claims against Peloton "**ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING**." ECF No. 1-1 §§ 20, 20(e); *see also* Compl. ¶ 67. Peloton's updated Terms of Service continue to contain the same provisions. *See* Decl. of Daniel Feinberg ("Feinberg Decl.") Ex. E (Peloton Terms of Service (last updated Dec. 27, 2019)) ("2019 TOS") §§ 20, 20(e). Courts have repeatedly confirmed that such agreements are enforceable under New York law. Because Plaintiffs' individual claims cannot support federal jurisdiction, this Court should dismiss the action.

Finally, even if Plaintiffs could somehow overcome their binding agreements to arbitrate and to pursue any action only in an individual capacity, they still would fail to state a claim. Plaintiffs' attempt to recover the payment of a state tax in federal court is barred by the Tax Injunction Act and the related comity doctrine. And Plaintiffs failed to abide by the processes that each relevant state's tax laws mandate as a precondition for filing a lawsuit for an alleged overpayment of tax. For those reasons, too, Plaintiffs cannot maintain this action in federal court.

This Court should thus grant Peloton's motion to compel arbitration or grant Peloton's motion to dismiss with prejudice.

**STATEMENT OF ALLEGED FACTS**

## I.    The Peloton Terms Of Service

Peloton is a cutting-edge fitness platform that helps its members accomplish their exercise goals by enabling them to exercise where and when they want. *See* Compl. ¶¶ 2, 18-19. With the state-of-the-art Peloton Bike or Peloton Tread, members can access Peloton's catalogue of fitness

2

classes—which are taught by some of the world's best instructors—and stream them live or on-demand on a high-definition screen.  *See id.*   To subscribe to and use Peloton's content and services, members pay a monthly subscription fee.  *Id.* ¶ 4.  Peloton's All-Access Membership costs $39 per month and is available to Peloton Bike and Tread owners, while Peloton's Digital Membership costs $12.99 per month and (through the Peloton App) makes fitness classes available to anyone with a compatible phone, tablet, TV, or computer.  *See id.* ¶¶ 4, 18.

Peloton's relationship with its members is governed by its Terms of Service, a binding contract that includes and incorporates Peloton's Membership Terms, warranty, and other policies (together, the "Terms").  *Id.* ¶¶ 4, 26; *see also* ECF No. 1-1.[1]  Pursuant to those Terms, Peloton subscribers agree to pay Peloton's monthly fee as well as applicable taxes and other charges.  Compl. ¶ 5.  Members' use of Peloton's services is expressly conditioned on agreement to and acceptance of the Terms.[2]  The Terms also prohibit Peloton members from letting others use their accounts.[3]  Bold, capitalized letters near the top of the Terms inform prospective members that

> **THE[] TERMS CONTAIN A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER (SECTION 20). READ CAREFULLY, INCLUDING YOUR RIGHT, IF APPLICABLE, TO OPT OUT OF ARBITRATION.  EXCEPT FOR CERTAIN TYPES OF DISPUTES DESCRIBED IN SECTION 20 BELOW, OR WHERE PROHIBITED BY LAW, BY ENTERING INTO THESE TERMS YOU EXPRESSLY**

---

[1]   ECF No. 1-1 is a copy of Peloton's September 14, 2018 Terms of Service that Plaintiffs included as an exhibit to their complaint.  That version has long since been superseded by later versions of Peloton's Terms of Service.  *See* Feinberg Decl. ¶ 6; 2019 TOS.

[2]   *See* ECF No. 1-1 at 1 ("By registering as a member or by visiting, browsing, or using the Peloton Service in any way, you (as a 'user') accept and agree to be bound by these Terms of Service ('Terms'), which forms a binding agreement between you and Peloton."); *id.* ("If you do not wish to be bound by these Terms, you may not access or use the Peloton Service.").

[3]   *See id.* § 1 ("[t]he Peloton Service is offered only for your personal, non-commercial use, and not for the use or benefit of any third party"); *id.* § 2 ("This license is personal to you and may not be assigned or sublicensed to anyone else."); *id.* § 4 ("You may not allow others to use your account.").

**AGREE THAT DISPUTES BETWEEN YOU AND PELOTON WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION, AND YOU HEREBY WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.**

ECF No. 1-1 at 1.  The arbitration clause and class-action waiver provisions in Section 20 similarly

flag their importance with specialized text providing:  "**ARBITRATION CLAUSE & CLASS**

**ACTION WAIVER – IMPORTANT – PLEASE REVIEW AS THIS MAY AFFECT YOUR**

**LEGAL RIGHTS.  APPLICABLE TO THE FULL EXTENT PERMITTED BY LAW.**" *Id.*

§ 20.  Throughout the period relevant to this case, Section 20 has specified that:

- Any dispute, claim, or controversy arising out of or relating to Peloton's Terms of Service, or the breach or interpretation thereof, will be resolved "**solely by binding, individual arbitration**."[4]

- Parties agree to bring claims against the other only in an individual capacity and waive the right to bring or participate in a class action.[5]

- The Federal Arbitration Act governs enforcement and interpretation of the Terms.[6]

- "The parties agree that the arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of th[e] arbitration agreement."[7]

---

[4]   *Id.* § 20(a).  Disputes in small-claims court and the pursuit of injunctive relief for certain intellectual-property disputes are excepted, and members "**retain the right to opt out of arbitration entirely and litigate any Dispute**" if they give Peloton written notice within 30 days from the date they first agree to the Terms.  *Id.* § 20(b).  There is no allegation that Plaintiffs provided such notice to Peloton upon first agreeing to the Terms.

[5]   *See id.* § 20(a) ("We each agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services or Content (collectively, 'Disputes') will be resolved solely by binding, individual arbitration and not in a class, representative, or consolidated action or proceeding."); *id.* § 20(e) ("**YOU AND PELOTON AGREE THAT EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**").

[6]   *Id.* § 20(a).

[7]   *Id.* § 20(c).

- If any part of Section 20's terms (other than the class-action waiver provision) is found invalid or unenforceable, the other parts will still apply.[8]

The Terms also specify that Peloton may update them at its discretion, and that Peloton will let members know about updates by (at a minimum) posting them on its website or through the Peloton Service. *Id.* §§ 22, 24. Members agree that use of Peloton's content or services after any update constitutes agreement to be bound by the updated Terms, and that such agreement is required for continued use. *Id.* § 25. When making certain updates to its Terms, Peloton also notifies members of the update directly through the Peloton Bike, Tread, or App—and requires members in those instances to specifically accept the amended Terms in order to continuing using Peloton's services. *See* Feinberg Decl. ¶ 9. Peloton also notifies members of certain updates to its Terms of Service by email. *See, e.g.*, Decl. of Zulay Olivo ("Olivo Decl.") ¶¶ 6-8.

The September 14, 2018 version of Peloton's Terms of Service attached to Plaintiffs' complaint provided that "[t]he arbitration will be conducted by the American Arbitration Association ('AAA') under its Consumer Arbitration Rules (the 'AAA Rules')." ECF No. 1-1 § 20(c). Peloton has updated its Terms of Service several times since September 2018. Feinberg Decl. ¶ 6. Beginning with Peloton's December 27, 2019 Terms of Service, Peloton revised the arbitration clause to provide that "[a]ny arbitration will be conducted by JAMS pursuant to its Streamlined Arbitration Rules and Procedures ('JAMS Rules') then in effect, except as modified by these Terms." *See* Feinberg Decl. ¶ 7; 2019 TOS § 20(d).

## II.    Plaintiffs' Agreement To The Peloton Terms Of Service

Plaintiff Brannon Skillern alleges that she bought a Peloton Bike in January 2019 while living in New York. Compl. ¶¶ 6, 12, 24, 38. She moved to Virginia in April 2020 but has been

---

[8]    *Id.* §§ 20(e), (g); *see also id.* § 22.

an All-Access Membership subscriber since purchasing her Bike.  *Id.*  Plaintiff Ryan Corken similarly alleges that he bought a Peloton Bike in December 2019 and has been an All-Access Membership subscriber since then.  *Id.* ¶¶ 6, 13, 25, 39.  He lives in Massachusetts.  *Id.* ¶ 13.

Both Plaintiffs "accepted and agreed to be bound by Peloton's Terms of Service, including its Membership Terms, when they subscribed to Peloton Membership subscriptions and used their Peloton Bikes, Peloton Treads, and other Peloton products and services."  *Id.* ¶ 67.  Plaintiffs admit that the Terms constitute a binding, enforceable contract between them and Peloton.  *Id.* ¶¶ 26, 68. Plaintiffs continue to subscribe to Peloton's All-Access Membership today.  *Id.* ¶¶ 24-25.

Peloton maintains account records in the ordinary course of business with respect to each Peloton member.  Feinberg Decl. ¶ 10; *see also* Compl. ¶ 58.  Peloton's account records confirm that Skillern agreed to Peloton's September 14, 2018 Terms of Service on January 15, 2019, using the web or a mobile device.  Feinberg Decl. ¶ 13 & Ex. F.  Skillern later agreed to Peloton's December 27, 2019 Terms of Service on March 20, 2020, while using the Peloton Bike.  *Id.* Peloton's account records[9] also confirm that Corken agreed to Peloton's September 14, 2018 Terms of Service on December 8, 2019, while using the web or a mobile device.  Feinberg Decl. ¶ 15 & Ex. G.  Corken later agreed to Peloton's December 27, 2019 Terms of Service on December 27, 2019, while using the Peloton Bike.  *Id.*[10]

### III.    Plaintiffs' Complaint

Under the Membership Terms that are included in and comprise part of Peloton's Terms of Service, Plaintiffs agreed to pay Peloton a monthly fee plus any applicable taxes and other

---

[9]    Plaintiffs' counsel provided Corken's account information on September 3, 2021.  *See* Decl. of Jean Pawlow ¶ 2 & Ex. A.

[10]    Peloton's business records also confirm that Peloton emailed notice of the updated terms to the email addresses associated with both Plaintiffs' accounts.  *See* Olivo Decl. ¶¶ 7-8; *id.* Exs. A & B.

charges.  Compl. ¶¶ 4-5, 24-25.  Skillern alleges that beginning in January 2019, while living in Brooklyn, New York, she paid $42.47 each month to Peloton, including $3.47 per month attributable to sales tax.  *Id.* ¶ 38.  Skillern also alleges that Peloton continued to charge her $3.47 per month in sales tax after she moved to Vienna, Virginia in April 2020.  *Id.*  Corken alleges that beginning in December 2019, while living in Massachusetts, he paid $41.44 each month to Peloton, including $2.44 per month attributable to sales tax.  *Id.* ¶ 39.

Plaintiffs allege that at the time Peloton assessed sales tax with respect to their subscriptions, through December 31, 2020, no sales tax was actually owed under New York, Virginia, or Massachusetts law.  *Id.* ¶ 43.  Plaintiffs assert that by collecting sales tax on their subscriptions, Peloton breached its Terms of Service.  *Id.* ¶ 70.  Plaintiffs further claim that the same conduct violated New York's and Virginia's consumer-protection statutes.  *Id.* ¶¶ 72-95.

Notwithstanding their contractual agreement to bring claims against Peloton "only in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding," ECF No. 1-1 § 20(e) (emphasis and capitalization omitted); Feinberg Decl. Ex. A § 20.6; 2019 TOS § 20(f), as well as their contractual agreement only to bring claims in individual arbitration, ECF No. 1-1 § 20(a); Feinberg Decl. Ex. A § 20.1; 2019 TOS § 20(a), Plaintiffs filed this class action against Peloton on August 12, 2021, seeking to represent "[a]ll persons or entities residing in Massachusetts, New York, and/or Virginia who paid tax on a Peloton Membership through December 31, 2020," Compl. ¶ 52.

## ARGUMENT

## I.  PLAINTIFFS MUST ARBITRATE THEIR CLAIMS

As Plaintiffs acknowledge, "Plaintiffs . . . accepted and agreed to be bound by Peloton's Terms of Service, including its Membership Terms, when they subscribed to Peloton Membership subscriptions and used their Peloton Bikes, Peloton Treads, and other Peloton products and

services."  Compl. ¶ 67.  Those terms expressly provide that "any dispute, claim or controversy

arising out of or relating to these Terms or the breach . . . thereof . . . will be resolved **solely by**

**binding, individual arbitration**."  ECF No. 1-1 § 20(a); 2019 TOS § 20(a).  Accordingly, this

Court should compel Plaintiffs to arbitrate their claims and dismiss this case with prejudice.

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate "shall be

valid, irrevocable, and enforceable."  9 U.S.C. § 2.  This forceful language reflects the "liberal

federal policy favoring arbitration agreements."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621

(2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

"[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather

than litigate, disputes."  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012).  "[I]t is

difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second

Circuit] 'ha[s] often and emphatically applied.'"  *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231,

234 (2d Cir. 2006) (citation omitted).

In adjudicating a motion to compel arbitration, courts examine "(1) whether the parties

have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes

within the scope of the arbitration agreement."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d

113, 128 (2d Cir. 2011) (citation omitted).  In deciding such motions to compel, courts apply a

"standard similar to that applicable for a motion for summary judgment."  *Bensadoun v. Jobe-Riat*,

316 F.3d 171, 175 (2d Cir. 2003) (citation omitted).  That standard requires a court to consider not

only the complaint, but all relevant evidence submitted by the parties, including affidavits.  *See*

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016); *see also Ralph Lauren Corp. v.*

*U.S. Polo Ass'n*, 2014 U.S. Dist. LEXIS 123968, at *3 (S.D.N.Y. Sept. 4, 2014) (on a motion to

compel arbitration, courts are "not limited to . . . the pleadings").  Here, the evidence establishes that Plaintiffs must arbitrate their claims.

### A.      The Parties Entered Into A Valid Agreement To Arbitrate

First, the parties entered into a valid agreement to arbitrate.  Plaintiffs admit that Peloton's "Terms of Service, including the Membership Terms, [are] a binding, enforceable contract" between Peloton and its members.  Compl. ¶ 68.  Plaintiffs further admit that they "accepted and agreed to be bound by Peloton's Terms of Service, including its Membership Terms, when they subscribed to Peloton Membership subscriptions and used their Peloton Bikes, Peloton Treads, and other Peloton products and services."  *Id.* ¶ 67.  Plaintiffs likewise admit that those Terms "contain an arbitration clause," *id.* ¶ 29, which provides that "any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services of Content (collectively 'Disputes') will be resolved **solely by binding, individual arbitration**," ECF No. 1-1 § 20(a); 2019 TOS § 20(a).

Although Plaintiffs acknowledge that they "agreed to resolve future disputes [with Peloton] in binding individual arbitration" ECF No. 21 at 2, they assert that their agreement to arbitrate cannot be enforced in this case.  Plaintiffs note that Peloton's September 14, 2018 Terms of Service provided that arbitration would be conducted by AAA.  *See* Compl. ¶ 29; ECF No. 1-1 § 20(c). Plaintiffs claim that in November 2019, AAA began to decline to accept future matters submitted against or by Peloton and requested that Peloton remove AAA from its consumer arbitration agreements.  Compl. ¶ 30.  Plaintiffs argue that Peloton refused to remove AAA from its arbitration agreements "[t]hrough at least December 23, 2019."  *Id.* ¶ 31.  Plaintiffs assert that, as a result, Peloton's September 2018 arbitration clause is "invalid and unenforceable."  *Id.* ¶ 32.

Plaintiffs' claims about the state of affairs through "December 23, 2019" misses the mark. Beginning with Peloton's December 27, 2019 Terms of Service, Peloton removed AAA from the

Terms' arbitration clause and specified that "[a]ny arbitration will be conducted by JAMS pursuant to its Streamlined Arbitration Rules and Procedures."  2019 TOS § 20(d).  The updated Terms further provide that "[i]f JAMS fails or declines to conduct the arbitration for any reason, we will mutually select a different arbitration administrator.  If we cannot agree, a court will appoint a different arbitration administrator."  *Id.*  Plaintiffs do not allege (nor could they) that JAMS is unwilling or unable to arbitrate their claims, let alone that a different administrator could not be appointed in that event.

The record firmly establishes that Plaintiffs agreed to Peloton's updated December 27, 2019 Terms, which included the revised arbitration clause.[11]  When rolling out its updated December 27, 2019 Terms, Peloton notified U.S. members of those updated Terms via their Bike, Tread, or App, and required each member to consent to the updated Terms in order to proceed and continue using Peloton's services.  Feinberg Decl. ¶ 9.  Notably, Peloton members could not continue to use Peloton's services, including their Bike, Tread, or App unless and until they agreed to Peloton's updated December 27, 2019 Terms.  *See id.* ¶¶ 9, 13, 15.[12]

---

[11]   Because a motion to compel arbitration is reviewed on a summary judgment-like standard and parties are permitted to submit evidence, courts routinely find the existence of a valid agreement to arbitrate based on a defendant's electronic records indicating a plaintiff's assent to updated arbitration agreements.  *See, e.g., O'Callaghan v. Uber Corp. of Cal.*, 2018 U.S. Dist. LEXIS 112021, at *15 (S.D.N.Y. July 3, 2018) ("Uber's electronic records show that O'Callaghan assented to four updated agreements, each of which contains the arbitration provision.").

[12]   Plaintiffs have argued that they are not bound by the updated arbitration clause in Peloton's December 27, 2019 Terms (and those that followed) because—they say—Peloton did not email them notice of the updated terms.  ECF No. 21 at 2.  But, as discussed below, because Plaintiffs expressly agreed to the updated Terms while using their Peloton Bikes (*see* Feinberg Decl. ¶¶ 13, 15), whether Peloton *also* notified Plaintiffs of the updated Terms via email and its website is of no moment.  And Peloton's records establish that Peloton *did* send notice of its updated December 27, 2019 Terms to the email addresses associated with both Plaintiffs' accounts.  *See* Olivo Decl. ¶¶ 6-8.

Account records that Peloton maintains in the ordinary course of business identify the date on which each member, including Plaintiffs, agreed to those updated Terms.  Feinberg Decl. ¶¶ 10-11; *see also* Compl. ¶ 58 ("On information and belief, Peloton records information concerning its customers and their subscriptions in its internal databases.").  As relevant here, Peloton's account records confirm that Skillern agreed to Peloton's December 27, 2019 Terms of Service on March 20, 2020 while using the Peloton Bike.  Feinberg Decl. ¶ 13; *id.* Ex. F.  Peloton's account records similarly confirm that Corken agreed to the December 27, 2019 Terms on December 27, 2019, while using the Peloton Bike.  Feinberg Decl. ¶ 15; *id.* Ex. G.

The arbitration clause in Peloton's updated Terms of Service controls here.  Plaintiffs did not bring their claims until over a year and a half after they agreed to the updated Terms of Service.  Nor would it matter even if Plaintiffs could show that their claims predated the updated Terms.  After all, it is settled law that absent an express limitation to "future disputes," a valid arbitration clause applies even to claims that predate its formation.  *See, e.g.*, *Valle v. ATM Nat'l, LLC*, 2015 WL 413449, at *5 (S.D.N.Y. Jan. 30, 2015) ("The Second Circuit has held that arbitration clauses without an express limitation to 'future disputes' should be applied to preexisting claims." (citation omitted)); *Smith/Enron Cogeneration Ltd. P'ship, v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (arbitration agreement without temporal limitation applies to "actions predating the signing of the contract"); *Raymond v. Mid-Bronx Haulage Corp.*, 2017 WL 9882601, at *4 (S.D.N.Y. June 10, 2017) ("[T]he Second Circuit generally presumes retroactive application of broad arbitration provisions absent explicit temporal limitations." (citations omitted)).

Peloton's Terms of Service contain no explicit temporal limitation but broadly apply to "*any* dispute, claim or controversy arising out of or relating to these Terms or the breach . . . thereof."  ECF No. 1-1 § 20(a) (emphasis added); 2019 TOS § 20(a).  Accordingly, the updated

11

arbitration agreement controls here.  *See Williams v. Joseph Dillon & Co.*, 243 A.D.2d 559, 560 (N.Y. App. Div. 1997) (by agreeing to arbitrate "any controversy," plaintiff agreed to arbitrate "all disputes," including those concerning transactions which occurred before agreement's execution).

Peloton's Terms of Service also independently confirm that Peloton's updated terms control here.  The September 14, 2018 Terms of Service that Plaintiffs assert they "accepted and agreed to be bound by," Compl. ¶ 67, expressly provided that Peloton "may update these Terms at any time, in [its] sole discretion" and would make those updates available to Peloton members by posting them on Peloton's website and/or through the Peloton service.  ECF No. 1-1 § 25.  Peloton posted its December 27, 2019 Terms on its website on the date that those terms took effect, *see* Feinberg Decl. ¶ 5, and Peloton's current Terms of Service are also posted on its website, *see Peloton Terms of Service*, Peloton, https://www.onepeloton.com/terms-of-service (last updated June 21, 2021).  Plaintiffs indisputably agreed that if they "continue[d] to use the Peloton Service after [Peloton] posted updated Terms, [Plaintiffs] are agreeing to be bound by the updated Terms." ECF No. 1-1 § 25; 2019 TOS § 25 ("If you don't agree to be bound by the updated Terms, then . . . you may not use the Peloton Service anymore.").[13]  Indeed, Plaintiffs admit that they continue to use Peloton's services today—18 months after Peloton updated its Terms of Service.  *See* Compl. ¶¶ 24-25, 67.

Accordingly, Plaintiffs agreed to a valid arbitration agreement.[14]

---

[13]   When Peloton updates the arbitration provisions of its Terms of Service, as on December 27, 2019, it provides members with the opportunity to opt out from those changes by sending written notice to Peloton within 30 days of the date such change became effective.  *See* ECF No. 1-1 § 20(f).  Plaintiffs do not allege that they opted out from the changes Peloton made to its arbitration clause when updating its Terms of Service on December 27, 2019.

[14]   Plaintiffs assume that AAA's purported unwillingness to conduct arbitrations involving Peloton would have rendered Peloton's September 14, 2018 arbitration agreement unenforceable while it was in force.  Compl. ¶¶ 29-32.  Because Plaintiffs agreed to Peloton's updated December

### B.    Plaintiffs' Claims Fall Within The Scope Of The Arbitration Agreement And The Arbitrator Must Resolve Any Contrary Argument

There is no serious dispute that Plaintiffs' claims fall within the scope of their arbitration agreement.  The arbitration provision covers "any dispute . . . arising out of or relating to the[] Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of [Peloton's] Services or Content."  2019 TOS § 20(a).  Plaintiffs assert that Peloton breached its Terms of Service and that this breach violated New York's and Virginia's consumer-protection statutes.  *See* Compl. ¶¶ 70, 72-95.  Plaintiffs similarly argue that Peloton charged sales tax "on a Peloton Membership" that it was not authorized to charge under its Terms of Service.  *Id.* ¶¶ 52-53; *see also id.* ¶ 59.  And Plaintiffs' obligation to pay sales tax itself arises from and relates to the Terms.  Because Plaintiffs' claims unambiguously arise out of or relate to the Terms or the breach or interpretation thereof, "the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128 (citing *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)).  In any event, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

Even if there was a question about whether Plaintiffs' claims fall within the scope of Peloton's arbitration agreement, the parties entrusted resolution of that dispute to the arbitrator— agreeing that "the arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of th[e] arbitration agreement."  2019 TOS § 20(d).  As the Supreme Court has explained, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in

---

27, 2019 Terms of Service, this Court need not reach the question whether Plaintiffs would have been obligated to arbitrate while the September 14, 2018 Terms remained controlling.

the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019). Because the Terms clearly and unmistakably assign threshold questions of arbitrability to the arbitrator, any dispute over whether Plaintiffs' claims fall within the scope of the arbitration agreement must be resolved by the arbitrator.

That result is further dictated by the parties' agreement that any arbitration shall be governed by the JAMS Rules. *See* 2019 TOS § 20(d).  Those Rules provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator," and that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Streamlined Arbitration Rules & Procedures* at Rule 8(b), JAMS, https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8 (effective June 1, 2021).  As the Second Circuit has explained, when parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as [further] clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol. Co*., 398 F.3d 205, 208 (2d Cir. 2005) (citing cases).  As such, although Plaintiffs' claims inarguably fall within the scope of the parties' arbitration agreement, any dispute should be resolved by the arbitrator.

### C.   Because All Of Plaintiffs' Claims Are Subject To Arbitration, This Court Should Dismiss The Complaint

The FAA directs the district court, "on application of one of the parties," to enter a stay in a case where the asserted claims are "referable to arbitration."  9 U.S.C. § 3; *see also Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *NPS Commc'ns, Inc. v. Cont'l Grp.*, 760 F.2d 463, 465 (2d Cir. 1985).  However, "[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." *Arrigo v.*

*Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 305 (S.D.N.Y. 2010) (quoting *Spencer-Franklin v. Citigroup/Citibank N.A.*, 2007 WL 521295, at *4, 11 (S.D.N.Y. Feb. 21, 2007)). Because all of Plaintiffs' claims are subject to arbitration, this Court should grant Peloton's motion to compel arbitration and dismiss this action.[15]

## II.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS

### A.   Because Plaintiffs Waived The Right To Bring A Class Action, This Court Cannot And Should Not Exercise Jurisdiction

If this Court declines for any reason to grant Peloton's motion to compel arbitration, it should dismiss Plaintiffs' claims for lack of jurisdiction.  Although Plaintiffs seek to invoke this Court's jurisdiction on the basis of the Class Action Fairness Act, Compl. ¶ 15, their own complaint establishes that Plaintiffs waived the right to bring a class action against Peloton. Because Plaintiffs do not allege that their individual claims establish subject-matter jurisdiction, this action does not belong in federal court.

Plaintiffs assert that jurisdiction is proper under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), "because this is a class action in which at least one member of the class is a citizen of a state different from defendant, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the proposed class contains more than 100 members."  Compl. ¶ 15.  Plaintiffs, however, expressly waived the right to bring a class action.  Even the outdated

---

[15]   At the November 2, 2021 pre-motion conference, Plaintiffs argued that Peloton's decision to litigate against *other* Peloton members in *another* case means that Peloton has waived its right to invoke the arbitration provision in *this* case.  That is wrong.  *See, e.g.*, *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 982 (2d Cir. 1996) ("Defendants cannot rely on the fact that [the movant] has brought eviction proceedings against other franchisees as a basis for [the movant's] waiver of its contractual right to arbitrate in this case.").  In any event, actions taken by Peloton under an older version of its Terms of Service have no bearing on the enforceability of an arbitration clause in a different contract—namely the updated Terms of Service to which Plaintiffs agreed.

September 14, 2018 Terms of Service that Plaintiffs attach to their complaint provide in bold and capitalized text:

> **YOU AND PELOTON AGREE THAT EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**

ECF No. 1-1 § 20(e).[16]  Plaintiffs admit that they "accepted and agreed to be bound" by those Terms, and that the Terms constitute a "binding enforceable contract between Peloton and Class members, including plaintiffs." Compl. ¶¶ 67-68.  And it is settled that such class-action waivers are enforceable under New York law.  *See, e.g.*, *Gold v. N.Y. Life Ins.*, 193 A.D.3d 454 (N.Y. App. Div. 2021); *Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 191 (N.Y. App. Div. 2004) (citing cases); *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354 (N.Y. App. Div. 2003) ("a contractual proscription against class actions, such as contained in the Agreements, is neither unconscionable nor violative of public policy" (citing cases)).  Courts routinely enforce class-action waivers in the context of a motion to dismiss or to compel arbitration.  *See, e.g.*, *Horton v. Dow Jones & Co.*, 2019 WL 952314, at *2 (S.D.N.Y. Feb. 27, 2019), *aff'd*, 804 F. App'x 81 (2d Cir. 2020) ("[T]he parties' Class Waiver bars the putative class claim asserted in the Complaint both in arbitration and in court"); *Camilo v. Uber Techs., Inc.*, 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018). This Court should do so here.  Because CAFA is the only asserted basis for federal jurisdiction,

---

[16]  "On a motion to dismiss, a court may consider facts stated in the complaint, any documents attached to the complaint, and any documents incorporated by reference into the complaint." *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 318 (S.D.N.Y. 2012) (citing *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2nd Cir. 2005)).  Where plaintiffs bring a claim for breach of contract, as here, the complaint "is deemed to incorporate the alleged contract by reference because the alleged contract is integral to the claim." *Id.* (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005)).  So the Court may consider Peloton's Terms of Service in adjudicating Peloton's motion to dismiss.

*see* Compl. ¶ 15, and Plaintiffs' own complaint establishes that they cannot invoke this Court's jurisdiction on that basis, this Court should dismiss Plaintiffs' complaint for lack of subject matter jurisdiction, *see, e.g.*, *Román v. Spirit Airlines*, 482 F. Supp. 3d 1304, 1316 (S.D. Fla. 2020).

Certain courts, upon finding that CAFA originally afforded them subject-matter jurisdiction, have proceeded upon dismissing a plaintiff's class claims to consider whether to exercise supplemental jurisdiction over a plaintiff's individual state law claims.  It is true that "*if jurisdiction exists at the time an action is commenced*, such jurisdiction may not be divested by subsequent events." *F5 Capital v. Pappas*, 856 F.3d 61, 76 (2d Cir. 2017) (emphasis added) (quoting *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam)). Here, however, owing to Plaintiffs' class-action waiver, jurisdiction never existed *ab initio*. Accordingly, the most appropriate course is to dismiss for lack or jurisdiction.

Even if this Court believed it had the power to exercise supplemental jurisdiction over Plaintiffs' individual claims, it should not do so.  Owing to sound principals of federalism and judicial economy, courts regularly dismiss supplemental claims once class claims are struck, rather than retain jurisdiction of such small state-law claims in federal court.  *See, e.g.*, *Horton*, 2019 WL 952314, at *3-4 (declining supplemental jurisdiction over state-law claims once class claims were struck), *aff'd*, 804 F. App'x at 85 ("[W]e agree with the district court's decision not to exercise jurisdiction over Horton's individual state-law claim after it concluded that Horton could not proceed on a class basis"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be

dismissed as well."); *Weber v. Quest Diagnostics of Pa., Inc.*, 2020 WL 6372382, at *6 (W.D.N.Y.

Oct. 29, 2020).  This accords with the Supreme Court's guidance that "'in the usual case in which

all federal-law claims are eliminated before trial, the balance of factors . . . will point toward

declining to exercise jurisdiction over the remaining state-law claims.'"  *Kolari v. New York-*

*Presbyterian Hosp*., 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.*, 484 U.S.

at 350 n.7); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi,

J., concurring) ("[O]ur circuit takes a very strong position that state issues should be decided by

state courts.").  The prudential argument for dismissal is even stronger here in light of the "[m]ore

embrace" considerations of comity dictating that federal courts should refrain from hearing

"claims for relief that risk disrupting state tax administration."  *Levin v. Com. Energy, Inc*., 560

U.S. 413, 417 (2010) (citation omitted); *see infra* Section II.B.1.

      Because Plaintiffs' class-action waiver deprives this Court of jurisdiction, it should dismiss

this matter for lack of jurisdiction.  In the alternative, it should decline to exercise supplemental

jurisdiction over Plaintiffs' individual state law claims and dismiss this action.

### B.    Plaintiffs Also Fail To State Claims On Which Relief Can Be Granted

Even if Plaintiffs could overcome all the above hurdles, dismissal would still be proper.

#### 1.    The Tax Injunction Act And Related Comity Doctrine Bar Plaintiffs' Claims

"Federal courts generally abstain from cases that challenge state taxation schemes on the

basis that those claims are more appropriately resolved in state court."  *Joseph v. Hyman*, 659 F.3d

215, 218 (2d Cir. 2011) (citing cases).  Under the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"),

and the closely related and "more embrace" comity doctrine, *Levin*, 560 U.S. at 423-24, "federal

courts are precluded from exercising jurisdiction over challenges to state tax assessments,

regardless of the type of relief sought," *Bernard v. Village of Spring Valley*, 30 F.3d 294, 296 (2d

Cir. 1994).

The TIA specifies that federal courts may not "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  Although the TIA directly bars claims for declaratory and injunctive relief, the comity doctrine bars similar claims for damages that "'risk disrupting state tax administration' if 'an adequate, speedy, and efficient remedy exists in state court.'"  *Dorce v. City of New York*, 2 F.4th 82, 98 (2d Cir. 2021) (quoting *Joseph*, 659 F.3d at 219-20).

In this case, Plaintiffs seek to challenge the assessment and collection of state taxes, and to recover those taxes that they allege were improperly taken from them.  But the TIA and the related comity doctrine bar such claims.  It makes no difference that Plaintiffs here sued a merchant rather than a state, or style their claims as seeking "damages" rather than "refunds."  *See, e.g.*, *Gwozdz v. HealthPort Techs., LLC*, 846 F.3d 738, 740 (4th Cir. 2017) (applying the comity doctrine to bar damages claim against vendor where "[i]nstead of requesting a refund . . . the complaint asserts several statutory consumer protection claims"); *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1124-25 (9th Cir. 2016) (comity doctrine barred damages suit against merchant that would have required court to find that merchant's tax withholding conflicted with state tax law).  The reason for those results is straightforward:  "A claim for damages against vendors in the performance of their tax collection duties has precisely the same potential as a claim for equitable relief to disrupt a state's entire system of revenue collection."  *Gwozdz*, 846 F.3d at 743; *see also Frederickson*, 840 F.3d at 1124 (noting that the effect of such claims would be to impact "the flow of revenue into [a state's] coffers").

Efficient state-law remedies permit Plaintiffs to challenge Peloton's collection of sales tax

and pursue the recovery of any alleged overpayment.  *See infra* Section II.B.2.  As such, this Court should abstain from hearing Plaintiffs' claims, which unnecessarily invite this Court to resolve unsettled state tax issues better addressed by New York, Massachusetts, and Virginia in the first instance, and threaten to interfere with the flow of revenue into those states' coffers not only from Peloton's customers, but those of countless other merchants impacted by the sales-tax provisions at issue.

### 2. Plaintiffs' New York Claims Should Be Dismissed For Failure To Exhaust Administrative Remedies

Alternatively, Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies.  Plaintiffs, in part, seek relief on behalf of a putative class of New York taxpayers on the theory that Peloton collected sales tax that allegedly is inapplicable to digital goods under state law.  But under New York's tax laws, such claims must be brought by seeking a refund via the New York Department of Taxation, using the administrative procedures set forth in New York Tax Law section 1139.  Because that procedure is the exclusive remedy available to Plaintiffs under state law, Plaintiffs' third claim for relief—under the New York General Business Law—as well as any claims on behalf of New York taxpayers should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[17]

New York Tax Law 1139 states that a consumer who seeks the return of sales tax "erroneously, illegally or unconstitutionally collected or paid . . . to a person required to collect

---

[17]  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also*, *Louis v. Comm'r of Soc. Sec.*, 2010 WL 743939, at *3 (S.D.N.Y. Mar. 2, 2010) (federal court lacked subject-matter jurisdiction due to plaintiff's failure to exhaust administrative remedies).  While Plaintiffs' failure to exhaust administrative remedies is a jurisdictional issue properly brought under Rule 12(b)(1), Peloton alternatively moves under Rule 12(b)(6) for the same reason.

tax" must apply for a refund to the state tax commission.  N.Y. Tax Law § 1139(a).  The Second Circuit has held that this "refund process is the 'exclusive remed[y] available to any person for the review of tax liability imposed' under state sales tax law, and no 'determination or proposed determination of tax or determination on any application for refund shall be enjoined or reviewed . . . by any action or proceeding other than a proceeding under article seventy-eight of the [New York] civil practice law and rules.'"  *Estler v. Dunkin' Brands, Inc.*, 691 F. App'x 3, 5 (2d Cir. 2017) (alterations in original) (quoting N.Y. Tax Law § 1140).  This is because the "collection of sales taxes constitutes merely a ministerial act," and as such, once the merchant collects the tax, its "responsibility ends" and "a dissatisfied taxpayer's recourse is against the taxing body." *Kupferstein v. TJX Cos.*, 2017 WL 590324, at *2 (E.D.N.Y. Feb. 14, 2017) (plaintiff could not avoid section 1139 by characterizing her claim as brought under New York General Business Law section 349) (internal alterations and quotation marks omitted).

In *Guterman v. Costco Wholesale Corp.*, 927 F.3d 67 (2d Cir. 2019), the Second Circuit faced a case similar to this one.  There, as here, the plaintiff alleged that he was unlawfully charged a sales tax under New York law and brought suit in federal court rather than filing an application for refund under section 1139.  The court held that the section 1139 application-and-refund process is the exclusive remedy available for claims of unlawfully charged sales tax.  *Id.* at 69-70.  In addition, the court held that the plaintiff "cannot make an end run around [this] exclusive remedy . . . by presenting the improper collection of sales tax as a claim under [New York's General Business Law] § 349."  *Id.* at 70; *see also Cohen v. Hertz Corp.*, 2013 WL 9450421, at *3 (S.D.N.Y. Nov. 26, 2013) ("The administrative refund remedy provided by section 1139 for sales tax overcharge claims is an exclusive one." (citation omitted)); *Gilbert v. Home Depot*, 2014 WL 4923107, at *4 (W.D.N.Y. Sept. 30, 2014) ("[T]he question of whether a vendor is collecting and

remitting sales taxes in accordance with state law is a question that has been entrusted to the Department of Taxation . . . .  Plaintiff cannot, as a matter of law, maintain this action alleging [the vendor] improperly charged sales tax on a nontaxable item."); *Davidson v. Rochester Tel. Corp.*, 163 A.D.2d 800, 802 (N.Y. App. Div. 1990) ("[A] claim against the State for recovery of taxes paid must be preceded by exhaustion of administrative remedies." (citing cases)).

Plaintiffs do not allege that they have sought administrative relief under section 1139. Instead, Plaintiffs seek to sidestep its requirements by claiming (inaccurately) that Peloton has not remitted the collected sales tax to the New York Department of Taxation.  Compl. ¶ 48.  In *Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643 (S.D.N.Y. 2018), the court rejected a similarly transparent attempt to avoid section 1139.  As the court explained, conclusory allegations that "Defendants have not remitted the collected monies to the Department" do not render section 1139 inapplicable, nor even justify jurisdictional discovery, particularly given that a plaintiff can resolve whether the defendant remitted her sales tax to New York simply by filing a Form AU-11 Application for Credit or Refund of Sales or Use Tax.  *Id.* at 647-48.  Other courts have reached similar results. *See Kupferstein*, 2017 WL 590324, at *3 (plaintiff's allegation that defendant failed to remit the full amount she paid in taxes was speculation insufficient to support her claim).

The sole basis upon which Plaintiffs appear to rest their claim that Peloton did not remit the sales taxes it collected is the fact that Peloton recorded on its balance sheets an accrued expense corresponding to roughly $5 million a year for 2018 and 2019 for "potential sales tax liability associated with its subscription fees."  Compl. ¶ 48 (quoting Peloton Interactive, Inc., Registration Statement (Form S-1) at F-24 (Aug. 27, 2019), https://investor.onepeloton.com/node /6261/html ("Registration Statement")).  But on page 32 of that form, Peloton specifically notes that the accrued expense reflects a contingency for potential ***additional*** taxes and liabilities—not

for taxes that it actually collected.  And in any event, the accrued liability makes no reference to New York or any other state.  In other words, the contingency is a reserve in the event that Peloton *undercollected* taxes in any state, not a liability premised on overcollecting tax in New York or any other state.  And the same form explains that "[s]ales tax collected from customers and remitted to governmental authorities is not included in revenue and is reflected as a liability on the balance sheet."  Registration Statement at F-9.

Plaintiffs' conclusory claim that Peloton failed to remit taxes to New York is therefore no more founded than those claims rejected in *Togut* and *Kupferstein*.  As in those cases, Plaintiffs could have, but failed, to file the Form AU-11 that might have established otherwise.  As in those cases, Plaintiffs' failure to exhaust their administrative remedies must result in dismissal of any claims under New York law or premised on the payment of New York taxes.

### 3.   Plaintiffs' Massachusetts And Virginia Claims Also Fail

The Court should also decline to exercise jurisdiction to adjudicate Plaintiffs' claims for Massachusetts and Virginia taxpayers due to failure to exhaust administrative remedies**.**

### a.   Plaintiffs Have Not Alleged That They Filed Claims For Refunds In Massachusetts

Massachusetts lays out the procedure for requesting a refund of inappropriately collected taxes in Mass. Gen. Laws Ann. ch. 62C § 37 as follows:

> *Any person* aggrieved by the assessment of a tax, other than a tax assessed under chapters 65 or 65A [concerning the taxation of legacies and estates], may apply in writing to the commissioner, on a form approved by the commissioner, for an abatement thereof at any time within 1) 3 years from the last day for filing the return for such tax, . . . 3) or within 1 year from the date that the tax was paid, whichever is later. . . .

Those "procedures 'are exclusive, absent exceptional circumstances.' . . . [e]xhaustion is generally required unless the administrative remedy is seriously inadequate, the issue at stake is important,

novel, or recurrent, the decision has public significance affecting many taxpayers or the case is reduced purely to a question of law." *Leger v. Adams*, 1994 WL 879587, at *2 (Mass. Super. Ct. July 15, 1994), *aff'd sub nom*. *Leger v. Comm'r of Revenue*, 654 N.E.2d 927 (Mass. 1995). While courts have discretion to hear such claims, doing so is "generally disfavored." *Gen. Dynamics Corp. v. Bd. of Assessors of Quincy*, 444 N.E.2d 1266, 1268 (Mass. 1983) ("[W]e look with disfavor on the Superior Court's exercising jurisdiction over [tax matters].").

In a case factually similar to the one here, consumers who purchased items at Home Depot with coupons alleged that Home Depot improperly charged them sales tax on the pre-discounted purchase price, and that such overcharges constituted an unfair or deceptive practice in violation of Mass. Gen. Laws Ann. ch. 93A. *McGonagle v. Home Depot U.S.A., Inc.*, 915 N.E.2d 1083 (Mass. 2009). The Massachusetts Appellate Court affirmed a ruling from the Massachusetts Superior Court granting a motion for summary judgment on behalf of Home Depot. The court explained that statutes and regulations administered by the Massachusetts Department of Revenue "afford an aggrieved sales tax payer primary recourse potentially inconsistent with c. 93A remedies." *Id.* The court explained:

> A person seeking refund of an overpayment . . . may apply for an abatement within two years of the payment of the tax. Interest on the refund will depend on a Federal short-term rate, typically far below the rate of twelve percent authorized for compensatory damages by Massachusetts law. The remedies provided for refund "shall be exclusive, whether or not the tax is wholly illegal." These restrictive provisions reflect the Commonwealth's reliance on, and desired preservation of, taxes once collected.

*Id.* at 602 (internal citations omitted). So any claim premised on the overpayment of Massachusetts tax should be dismissed for failure to follow state procedure.

### b.   Plaintiffs' Virginia Claims Should Be Dismissed For Failure To Notify Peloton Before Bringing Suit

Although slightly different rules apply in Virginia, the Virginia Communications Sales and

Use Tax provisions also preclude a party from bringing suit until administrative remedies have been exhausted.  Plaintiffs allege that Virginia excludes from taxation "digital products delivered electronically."  Compl. ¶ 36 n.29 (citing Va. Code Ann. § 58.1-648(C)).  The statute in question, however, specifically sets forth "Customer remedy procedures for billing errors" as follows:

> If a customer believes that an amount of tax, or an assignment of place of primary use or taxing jurisdiction included on a billing is erroneous, the customer shall notify the communications service provider in writing. . .   If [the provider's] review shows that the amount of tax or assignment of place of primary use or taxing jurisdiction is in error, the communications service provider shall correct the error and refund or credit the amount of tax erroneously collected from the customer for a period of up to two years. . . .  The procedures in this section shall be the first course of remedy available to customers seeking correction of assignment of place of primary use or taxing jurisdiction, or a refund of or other compensation for taxes erroneously collected by the communications service provider, and **no cause of action based upon a dispute arising from such taxes shall accrue until a customer has reasonably exercised the rights and procedures set forth in this subsection**.

Va. Code Ann. § 58.1-652 (emphasis added).  Because Skillern did not comply with Va. Code Ann. § 58.1-652 before bringing suit,[18] she cannot pursue any claims premised on the overpayment of a Virginia tax in this case.

## CONCLUSION

For the foregoing reasons, Peloton's motion to compel arbitration should be granted.  In the alternative, Peloton's motion to dismiss should be granted with prejudice.

---

[18]  After Peloton filed its pre-motion conference letter, Skillern sent a letter to Peloton purporting to invoke Va. Code Ann. § 58.1-652 and requesting a refund of Virginia tax.  Because Skillern failed to do so before bringing suit, and the procedures of Va. Code Ann. § 58.1-652 have not yet been exhausted, her cause of action has not yet accrued.

Dated:  November 23, 2021                    Respectfully submitted,

                                             */s/ Steven N. Feldman*
                                             Steven N. Feldman
                                             LATHAM & WATKINS LLP
                                             1271 Avenue of the Americas
                                             New York, NY 10020
                                             Phone:   (212) 906-1200
                                             Fax:      (212) 751-4864
                                             Email:   steve.feldman@lw.com

                                             Jean A. Pawlow (admitted *pro hac vice*)
                                             Michael E. Bern (admitted *pro hac vice*)
                                             Gregory B. in den Berken (admission *pro hac vice*
                                             pending)
                                             LATHAM & WATKINS LLP
                                             555 Eleventh Street, NW, Suite 1000
                                             Washington, DC 20004-1304
                                             Phone:   (202) 637-2200
                                             Fax:      (202) 637-2201
                                             Email:   jean.pawlow@lw.com
                                                       michael.bern@lw.com
                                                       greg.indenberken@lw.com

                                             William J. Trach (admitted *pro hac vice*)
                                             LATHAM & WATKINS LLP
                                             200 Clarendon Street
                                             Boston, MA 02116
                                             Phone:   (617) 948-6000
                                             Fax:      (617) 948-6001
                                             Email:   william.trach@lw.com

                                             *Counsel for Defendant Peloton Interactive, Inc.*