UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRANNON SKILLERN, RYAN CORKEN, MICHAEL LITVIN, *and* KATHY LITVIN, *individually and on behalf of all others similarly situated*,

          Plaintiffs,

– against –

PELOTON INTERACTIVE, INC.,

          Defendant.

**OPINION AND ORDER**

21 Civ. 6808 (ER)

RAMOS, D.J.:

    Plaintiffs brought this action on August 12, 2021 against Peloton, alleging that Peloton breached its contract and violated consumer protections laws in Virginia, New York, Massachusetts, and Oregon by charging a sales tax on its subscription service, a digital good which is tax-exempt in these states. Doc. 1. Pending before the Court is Peloton's motion to compel arbitration and to dismiss. Doc. 43. For the reasons set forth below, Peloton's motion to compel arbitration is GRANTED and the motion to dismiss is DENIED without prejudice.

**I.    BACKGROUND[1]**

    Peloton is a fitness and media company that sells, among other things, access to live and on-demand exercise classes. ¶ 2. Customers can subscribe to Peloton for access to the classes, and Peloton had over 6.2 million members as of September 30, 2021. ¶¶ 2–4. The All-Access Membership allows the subscriber "and members of [their] household at one residential address (up to 20 user profiles) . . . full access to Peloton's

---

[1] Unless otherwise noted, all references to ¶ __ refer to the First Amended Complaint ("FAC"), Doc. 40.

available classes, content, and features[.]" Doc. 45-9 at 2. Subscribers are bound by Peloton's Membership Terms as well as Peloton's Terms of Service. ¶ 5. The Membership Terms, which are incorporated into the Terms of Service, state that subscribers "agree to pay the monthly fee specified" at purchase "plus any applicable taxes and other charges." *Id.* Subscribers also provide a saved payment method, from which they agree "to pay any amounts described [in the terms] without requiring a signed receipt." *Id.* The Terms also state that all disputes not required to be arbitrated are governed by New York law. ¶ 18.

The Terms also included a section titled "Arbitration Clause & Class Action Waiver" ("Section 20"). Section 20(a) contained a mandatory binding arbitration clause that states that Peloton and the subscriber "each agree that any dispute, claim or controversy arising out of or relating to these Terms . . . will be resolved solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding." Doc. 40-1 at 18. Section 20(e) contained a class action waiver, stating that the subscriber and Peloton

> agree that each of [them] may bring claims against the other only in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. Further, if the parties' dispute is resolved through arbitration, the arbitrator may not consolidate another person's claims with your claims and may not otherwise preside over any form of a representative or class proceeding. If this specific provision is found to be unenforceable, then the entirety of this Section 20 shall be null and void.

Doc. 40-1 at 19.

Section 20(c) specified that arbitrations would be held through the American Arbitration Association ("AAA") pursuant to AAA's Consumer Arbitration Rules. ¶ 32; Doc. 40-1 at 19. Section 20(c) further stated "that the arbitrator shall have exclusive

authority to decide all issues relating to the interpretation, applicability, enforceability and scope of this arbitration agreement."[2]  Doc. 40-1 at 19.

Section 25 of the Terms, titled "Modification," states as follows:

> We may update these Terms at any time, in our sole discretion.  If we do so, we'll let you know by, at a minimum, posting the updated Terms . . . on the Peloton Site and/or through the Peloton Service.  Modifications will be effective on the date that they are posted to the Peloton Site.  It's important that you review the Terms whenever we update them before you use the Peloton Service.  If you continue to use the Peloton Service after we have posted updated Terms, you are agreeing to be bound by the updated Terms.  If you don't agree to be bound by the updated Terms, then . . . you may not use the Peloton service anymore.

Doc. 40-1 at 22.

In 2019, Peloton was involved in separate, unrelated arbitration proceedings brought by over 2,700 individual consumers before the AAA regarding deletion of videos from its on-demand streaming library.  *See Fishon v. Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), Doc. 57 at 2.  However, Peloton failed to pay the required filing fees to the AAA.  The AAA thus stated that, under its rules, because it was declining to administer the arbitrations, the parties could choose to submit their dispute "to the appropriate court for resolution."  *Fishon*, Doc. 81-2.  Thus, a group of consumers filed a class action, in which Skillern is an unnamed member, against Peloton in the Southern District of New York on December 23, 2019.  *See generally Fishon*.  In that action, Peloton did not seek to enforce the arbitration provision nor the class action waiver.  *Id.*

The AAA also told Peloton in a November 14, 2019 letter that it would "decline to accept future consumer matters submitted against or by [Peloton]" and requested that it

---

[2] The December 27, 2019 modified Terms, discussed below, contain the same language.  Doc. 45-5 at 10.

"remove AAA from its consumer arbitration agreements so that there [would be] no confusion to Peloton's customers." ¶ 33; *Fishon*, Doc. 81-2.

Peloton did not remove mention of AAA from its Terms of Service until December 27, 2019, when it modified its terms to specify that arbitration would be conducted by JAMS (formerly known as Judicial Arbitration and Mediation Services) under its rules. Doc. 45 ¶ 7; Doc. 45-5 at 10. As relevant here, the other provisions of the Terms remained unchanged. Doc. 45-5 at 9–10 (arbitration requirement and class action waiver).

Plaintiffs Skillern, Corken, and Michael and Kathy Litvin[3] purchased subscriptions[4] in January 2019, December 2019, and June 2020, respectively. ¶¶ 13–15. After Peloton updated its terms in December 2019, Skillern agreed to the modified terms on March 20, 2020 while using the Peloton bike. Doc. 45 ¶ 13. The Litvins agreed to the terms on June 6 (Kathy) and July 20, 2020 (Michael) either on Peloton's website or on a Peloton bike. *Id.* ¶¶ 17–18. Corken's wife agreed to the modified terms on December 27, 2019 while using a Peloton bike. *Id.* ¶ 15.[5] Plaintiffs were charged an over-6% sales tax each month through 2020. ¶ 6. Skillern was charged $3.47 per month in sales tax while she lived in New York and then Virginia. ¶ 42. Corken was charged $2.44 per month in sales tax while living in Massachusetts. ¶ 43. The Litvins were charged $3.28 per month in sales tax while living in Oregon beginning in August 2021. ¶¶ 28, 44. It is not

---

[3] The Litvins paused their subscription later in 2020 but reactivated the subscription in August 2021. ¶ 15.

[4] Corken pays for his wife's subscription, but does not use her subscription himself. ¶ 27; Doc. 51 ¶¶ 13–18. The Litvins share one paid subscription, which they both use. ¶ 28.

[5] Subscribers were able to click through and read the Terms before subscribing, which clearly stated near the top of the Terms that they contained a binding arbitration provision. Docs. 45-1; 45-2; 45-3; 45-4; 56-1; 56-2.

disputed that the Peloton subscription services are tax exempt in those states. Peloton ultimately stopped charging sales tax on subscriptions in Massachusetts, New York, and Virginia on January 1, 2021, but does charge sales tax on certain consumers in Oregon to this day.[6] ¶¶ 48, 55. Peloton has not reimbursed Plaintiffs for taxes collected before that date, although the Litvins received partial refunds of certain charges after complaining. ¶¶ 44, 50.

Skillern and the Litvins bring a claim for breach of contract. ¶¶ 75–81. Skillern, individually and on behalf of a Virginia subclass, brings a claim for violation of the Virginia Consumer Protection Act, Va. Code § 59.1-196 *et seq*. ¶¶ 82–96. Skillern also brings a claim individually and on behalf of a New York subclass for violation of the New York General Business Law § 349. ¶¶ 97–106. Corken, individually and on behalf of a Massachusetts subclass, brings a claim for violation of Massachusetts Consumer Protection Law, Mass. Gen. Laws ch.93A §§ 2, 9. ¶¶ 107–20. The Litvins, individually and on behalf of an Oregon subclass, bring a claim for violation of the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605 *et seq*. ¶¶ 121–34.

Peloton filed a motion to compel arbitration and, in the alternative, a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, on January 11, 2022. Doc. 43.

II.     **DISCUSSION**

        **A. Motion to Compel Arbitration**

            1. *Legal Standard*

---

[6] The parties do not specify why certain customers continue to be taxed.

Section 4 of the Federal Arbitration Act requires courts to compel arbitration in accordance with the terms of the arbitration agreement upon the motion of either party to the agreement, provided that there is no issue regarding its creation. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing 9 U.S.C. § 4). Whether the parties agreed to arbitrate is generally a question decided by the court unless the parties "clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Determinations of arbitrability may be delegated to an arbitrator "if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Shaw Grp. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation marks and emphasis omitted)). In the absence of clear and unmistakable evidence that the parties intended to submit the question of arbitrability to the arbitrator, courts assume they, not arbitrators, were intended to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (citation omitted).

To determine whether to compel arbitration, the Court must weigh four primary considerations: "(1) whether the parties in fact agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if the parties assert federal statutory claims, whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Application of Whitehaven S.F., LLC v. Spangler*, 45 F.

Supp. 3d 333, 342 (S.D.N.Y. 2014), *aff'd*, 633 F. App'x. 544 (2d Cir. 2015) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)). "A party resisting arbitration on the grounds that the arbitration agreement . . . does not encompass the claims at issue[] bears the burden of proving such a defense." *Kulig v. Midland Funding, LLC*, 13 Civ. 4715 (PKC), 2013 WL 6017444, at *2 (S.D.N.Y. Nov. 13, 2013) (citing *Green Tree Fin Corp. v. Randolph*, 531 U.S. 79, 92 (2000)).

Moreover, "[f]ederal policy strongly favors arbitration as an alternative dispute resolution process," so "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and "[f]ederal policy requires [courts] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal quotation marks and citations omitted). "[U]nless it may be said with positive assurance that the arbitration clause" does not cover the disputed issue, the court must compel arbitration. *Id.* (quoting *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 932 F.2d 245, 250 (2d Cir. 1991)).

2. Waiver

Peloton argues that Plaintiffs agreed to, and are thus bound by, the valid arbitration clause requiring JAMS arbitration when they accepted the December 27, 2019 Terms of Service.

Plaintiffs argue in response that Peloton waived its ability to seek arbitration by defaulting in the earlier arbitration proceedings before the AAA that led to the *Fishon* action. In support, they point to a series of decisions, all but one of which are outside of this Circuit, wherein courts have denied motions to compel arbitration where the movant

failed to pay arbitration fees in an earlier arbitration proceedings involving the same parties. *See, e.g.*, *Cota v. Art Brand Studios, LLC*, No. 21 Civ. 1519 (LJL), 2021 WL 4864588, at *11 (S.D.N.Y. Oct. 15, 2021) (denying motion to compel arbitration in part because party was in default in the arbitration, waiving its right to arbitrate). However, Plaintiffs themselves highlight the key difference between those cases and the instant case—in *Cota*, the parties were "left forever in limbo" following the motion to compel arbitration after arbitration failed due to non-payment of fees. *Id.* Here, arbitration has not yet failed and in fact has not occurred at all. While Peloton defaulted in arbitration in regard to separate claims concerning deletion of streaming videos, Plaintiffs provide no support for the proposition that Peloton's default there also waives its ability to arbitrate completely distinct actions against completely different parties.[7] The fact that Peloton revised its Terms of Service to select a new arbitrator also does not leave Plaintiffs in limbo, but rather provides them with clarity as to how their claims are to be brought—before JAMS in individual arbitration. Accordingly, the Court holds that Peloton has not waived its right to arbitration.[8]

---

[7] Notably, Skillern, the only plaintiff that Plaintiffs allege is a party to the *Fishon* action, is not a named plaintiff in *Fishon*. "[A] nonnamed class member is [not] a party to the class-action litigation before the class is certified," *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (citation omitted), and class certification was denied in *Fishon* on January 19, 2022. *Fishon v. Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), 2022 WL 179771, at *1 (S.D.N.Y. Jan. 19, 2022). Therefore, there are no plaintiffs overlapping in these two actions.

[8] In the alternative, Peloton argues that the waiver argument should be decided by the arbitrator rather than this Court, as the modified Terms of Service state that "the arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of this arbitration agreement." Doc. 45-5 at 10. As interpretation of that provision is itself reserved to the arbitrator, the Court cannot determine definitively if the waiver arguments must also be submitted to the arbitrator.

3. *Validity of the Modified Arbitration Agreement*

Plaintiffs next argue that the arbitration agreement is illusory and thus invalid due to the Terms of Service provision allowing Peloton to modify the arbitration provisions unilaterally and apply changes retroactively. *See* Doc. 40-1 at 22.

As an initial response, Peloton argues that this question is reserved for decision by the arbitrator as an issue regarding the validity of the entire contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator[.]"). Specifically, since Section 25, which allows Peloton to modify the Terms at any time, could affect any aspect of the contract, Peloton argues that Plaintiffs are actually challenging the validity of the entire contract. This is similar to *Galvez v. JetSmarter, Inc.*, in which the plaintiff challenged a contractual arbitration provision as illusory because the agreement permitted the defendant to "amend or modify" the agreement "from time to time." No. 18 Civ. 10311 (VSB), 2019 WL 4805431, at *5 (S.D.N.Y. Sept. 30, 2019). The *Galvez* court stated: "[a]lthough the relevant section headers in Plaintiff's brief refer to the illusory quality . . . of the "arbitration provision" specifically, . . . Plaintiff's arguments clearly attack the validity of the [agreement] as a whole." *Id.* at *6. Accordingly, the question of whether there is a valid contract must be decided by an arbitrator in the first instance.

4. *Agreement to Terms*

Assuming there is a valid contract, Peloton next argues that all parties have properly accepted and are thus bound by the JAMS arbitration provision. It argues this is true even for Skillern and Corken, who initially subscribed and paid the taxes at issue

under the older version of the Terms but later accepted the modified terms, since "[t]he Second Circuit has held that arbitration clauses without an express limitation to future disputes should be applied to preexisting claims." *Valle v. ATM Nat., LLC*, 14 Civ. 7993 (KBF), 2015 WL 413449, at *5 (S.D.N.Y. Jan. 30, 2015) (internal quotation marks and citations omitted).  Further, Section 25 of the September 14, 2018 version of the terms stated that when terms are updated, continued use of Peloton services constitute agreement to be bound by the updated terms.  Doc. 40-1 at 22; *see also Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 726 (E.D.N.Y. 2017) ("Courts applying New York law consistently have held that customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms.") (internal quotation marks and citations omitted); *Valle*, 2015 WL 413449, at *4 ("plaintiffs had ample opportunity to opt-out of the Arbitration Provision after receiving sufficient notice of the new terms").

      Skillern and the Litvins do not dispute that they technically accepted the terms, but argue they were not on notice of the terms they accepted and thus are not bound.  As the Second Circuit explained in *Register.com, Inc. v. Verio, Inc*, the mere acceptance of a benefit such as a subscription membership may constitute assent, but only where the "offeree makes a decision to take the benefit with knowledge [actual or constructive] of the terms of the offer[.]"  356 F.3d 393, 403 (2d Cir. 2004).  Peloton responds that constructive knowledge is found where a party "had a sufficient opportunity to read the agreement and assented to the agreement through an unambiguous method," *O'Callaghan v. Uber Corp. of California*, No. 17 Civ. 2094 (ER), 2018 WL 3302179, at *6 (S.D.N.Y. July 5, 2018), and there is no requirement that a user "actually examine the

10

terms before assenting." *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) (citation omitted). Peloton provides screenshots of the various Terms acceptance pages demonstrating that the Terms were available to read and clearly state that they include a binding arbitration provision. *See* Docs. 45-1; 45-2; 45-3; 45-4; 56-1; 56-2.

The Court agrees that Skillern and the Litvins had actual or constructive knowledge of the Terms when they accepted them. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) (upholding similar term acceptance process); *Feld*, 442 F. Supp. 3d at 831 (same). Accordingly, they may not claim that they are not bound by the Terms due to lack of knowledge.

A question remains as to Corken, as it is actually his wife that uses the subscription, and Corken has not himself accepted any terms. Corken's sole interaction with Peloton is in paying the subscription charge on his wife's credit card from his savings account. Doc. 51 ¶¶ 13–18. Putting aside for now the question of Corken's standing, Peloton presents several arguments as to why Corken is still bound by the arbitration provision. First it argues that Corken is bound as a non-signatory to the agreement because he is receiving a direct benefit from the contract. *See Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999). Specifically, Peloton points to the fact that Corken has access to his wife's All-Access Membership which allows for multiple household profiles. ¶ 23; Doc. 45-9 at 2. Corken can thus create a profile and access membership benefits at any time, as the Litvins do under their shared account. The Court finds this argument unavailing. It is undisputed that Corken has not in fact created an individual account for himself and accessed Peloton's offerings as the Litvins have, and Peloton provides no caselaw holding that the mere option to

11

enjoy a service is significant enough to be considered a direct benefit binding a non-signatory to a contract.

Peloton next argues that the benefit Corken receives is the ability to bring his claim against Peloton under the Terms of Service. "Numerous courts have found that non-signatory parties are estopped from denying arbitration when they rely on or seek direct benefits under an agreement by, for example, bringing suit under that agreement." *Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 479 (S.D.N.Y. 2020). However, the breach of contract claim is brought only by Skillern and the Litvins and not Corken. Doc. 40 at 21. Corken only brings a claim for violation of the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch.93A §§ 2, 9. *Id.* at 26. There is thus a question of whether Corken's claim actually arises under the Terms. Peloton argues that it does, since the Terms specify that subscribers are charged "any applicable taxes and other charges," ¶ 5, and it is those charges that Corken alleges violate the Massachusetts consumer protection law. Plaintiffs respond that the claims are independent of the Terms, as other courts have held around the country regarding non-signatories to Peloton's terms. *See, e.g.*, *Greene v. Peloton Interactive Inc.*, 566 F. Supp. 3d 1299, 1305 (N.D. Fla. 2021) (holding that plaintiff's claims did not rely on the terms because plaintiff brought only Florida common law claims and no contract claims and had not accessed the signatories' services); *S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1040 (S.D. Cal. 2021) (declining to apply the doctrine of equitable estoppel to force a subscriber's wife who never used Peloton's products to arbitrate her claims of misrepresentation and concealment). However, these cases are distinguishable. Unlike *Greene* and *S.S.*, Corken does invoke the Terms of the

contract in his Massachusetts state law claim. Specifically, he alleges that Peloton made misrepresentations to consumers by stating (in the Terms) that they would be charged only applicable taxes when in fact they were charged unlawful sales tax each month. ¶ 111. Accordingly, Corken can be said to be bringing suit under the agreement, thereby invoking a direct benefit that estops him from denying arbitration.

As there is no dispute that the arbitration clause, if valid, covers all disputes related to the Terms, Doc. 40-1 at 18, Plaintiffs must submit their claims to JAMS arbitration. Peloton argues that this action should be dismissed instead of stayed because "all of the issues raised in the Complaint must be submitted to arbitration[.]" *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 305 (S.D.N.Y. 2010) ("the Court may dismiss [such] an action rather than stay proceedings") (internal quotation marks and citations omitted). However, the Second Circuit has held that "a stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested." *Katz v. Cellco Partnership*, 794 F.3d 341, 345 (2d Cir. 2015). Accordingly, the case will be stayed. The motion to dismiss is denied without prejudice to renewal pending the outcome of arbitration.

### III. CONCLUSION

For the foregoing reasons, Peloton's motion to compel arbitration is GRANTED and the motion to dismiss is DENIED without prejudice. This action is hereby STAYED pending arbitration, and the parties are directed to advise the Court within 48 hours of the outcome of the arbitration.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 43.

It is SO ORDERED.

Dated:  August 29, 2022
        New York, New York

_____
EDGARDO RAMOS, U.S.D.J.